[Cuthbert et al. *v.* Knight's Executors.]

Thomas Cuthbert and Anthony Cuthbert, trustees for Elizabeth Brewster *against* Thomas Cuthbert, Anthony Cuthbert, Henry Drinker, George Ludlam and Thomas White, executors of Peter Knight.

Whether a legacy of government stock be specific or general, must depend on the texture of the will and the circumstances of the case.

CASE stated for the opinion of the court.

On the 18th September 1798, Peter Knight made his last will, and therein, amongst other things, bequeathed as follows, after devising his real estates:

"I also give to Thomas Cuthbert and Anthony Cuthbert, the "dividends and income of $8000 six per cent. stock debt of the "United States, in the funds of the United States, to them the "said Thomas and Anthony, their executors and administrators, "for the separate use of my wife's niece Elizabeth Brewster, "wife of William Brewster; and upon this express trust and "confidence, that they the said trustees receive the said divi-"dends and income, and apply the same for the support of the "said Elizabeth, and the maintenance and education of her "children. And I also give the said trustees, their executors "and administrators, the further sum of $600, money on the "same trust, and to the same uses to which I have given the "income of the said $8000, and in aid of and by way of addi-"tion to the said income. And I also give to the said trustees "the principal of the said $8000, as the same shall be paid off "and discharged by the government of the United States, to "be held in trust and applied as I have before directed with re-"gard to the dividends and income thereof."     $8000

|  |  |  |  |
|---|---|---|---|
| He devised to Deborah Newman the sum of $2000 of 6 per cent. of the United States absolutely. | | . | 2000 |
| To John Knowles of 6 per cent. stock, | | . . | 1000 |
| To his son John Knowles | do. | . . | 1000 |
| To John Hart | do. | . . | 1000 |
| To John Wilkinson | do. | . . | 1000 |
| To Rebecca Holmes | do. | . . | 1000 |
| To Bryan Wilkinson | do. | . . | 1000 |

$16,000

| | | | |
|---|---|---|---|
| *To Thomas Cuthbert of his deferred stock, and 200l. in money, | . . . . . | 1000 | [*487 |
| To Anthony Cuthbert of his deferred stock and 100l. in money, | . . . . . . | 1000 | |
| To Grace Wagner of his deferred stock, | . | 1000 | |
| To Jacob Wagner, esq. her son, | do. | 1000 | . |
| To John Salter, jun. | do. | 1000 | . |
| To Abraham Collins and Catharine his wife, do. | 1000—$6000 | | |

[Cuthbert et al. *v.* Knight's Executors.]

Then follow a number of pecuniary devises.

" And all the rest of my estate, real, personal, or mixed, after " my debts and funeral expences, and the preceding legacies are " paid, I give and devise one fifth part thereof to Daniel P. " Knight, his heirs, &c.; one fifth part to Deborah Newman, her " heirs, &c.; one fifth part to George Ludlam and Lydia his " wife, their heirs, &c.; one fifth part to Thomas White and " Margaret his wife, their heirs, &c.; and one fifth part to " Grace Wagner, and her heirs, &c.; and I direct, that none of " my legacies shall lapse by the death of any of my legatees in " my life time."

The testator, Peter Knight, died in March 1802, leaving a large real and personal estate, more than sufficient to pay his debts and legacies ; and by his will devised and bequeathed all the stock of which he was possessed, or to which he was entitled.

[The testator at the time of making his will and at the time of his death, was possessed of $16,283\frac{59}{100}$ of nominal 6 per cent. stock, and of $6087\frac{40}{100}$ of deferred debt of the United States, as appeared by his inventory, and the admission of the counsel.]

Between the date of the will and his death, the said testator received from the United States, the annual sums which were paid by way of reduction and gradual extinguishment of the stock given in trust for the said Elizabeth.

The question submitted to the consideration of the court is, whether the said Elizabeth Brewster is entitled to have the said dividends replaced and made up to her ? Or if she is only to receive the said stock in the state to which it was reduced at the death of the testator as aforesaid ?

Mr. Milnor for the defendants argued, that the devise to Mrs. Brewster was specific. It cannot be collected from the words of the will, that it was the testator's intention that Mrs. Brewster should be allowed the dividends paid to him by the government, between the times of making his will and of his death. *488] *On the contrary it is expressed, that the trustees shall receive the principal of the 6 per cent. stock " as the same " shall be paid off and discharged," &c. The will was inchoate when it was made, but consummate by the testator's death. No event had happened which was unforeseen by him. He had been in the habit of receiving his quarterly payments, and must have known that the principal of his 6 per cent. stock was daily diminishing ; for though he annually received 2 per cent. of the original sum, yet his quarterly payments continued the same without subtraction. It is stated that the testator has bequeathed all the stock he was entitled to. On an accurate estimate, it appears that he was possessed of $16,283\frac{59}{100}$ of 6 per cents, and devised $16,000, leaving a surplus of $283 59 cents ; and that he was possessed of $6087\frac{40}{100}$ of deferred debt, and devised $6000, leaving a surplus of $87 40 cents. He distinguishes between cash and the two species of stock, which were

[Cuthbert et al. *v.* Knight's Executors.]

also of different value; and gives no more of the latter than was really his own property when his will was executed. These are of important consideration in the case. But if the plaintiff's construction prevails, there will not be enough personal property left to pay off the debts and specific legacies. Indeed, with the same propriety that it is insisted, the 6 per cents should be made up to Mrs. Brewster, of the same value as they really were at the time of the will, it may be urged, that they should be replaced at the original net value, instead of the nominal sum of $8000, at the time of his death. But this is not pretended to be his intention. If he meant that the trustees should be paid the value of the stock when the will was made, it would have been easy to have expressed it. If it is contended that the residuary clause prevents the legacy from being considered as specific, my answer is, that it naturally refers only to the pecuniary legacies.

It is laid down in Avelyn *v.* Ward, 1 Ves. 424, that legacies of stock, or annuities in the public funds may, according to the circumstances of the case, be considered either as specific or general, and consisting only in quantity. In Sleech *v.* Thorington, 2 Ves. 263, there was a devise of 2413l. 13s. in South Sea annuities; and though the testatrix at her death, was possessed of but 2157l. 12s. 1d., yet as she was supposed to have apprehended that she had more, it was decreed to be a devise of the identical individual thing. So in Ashton *v.* Ashton, 3 Wms. 384, there was a devise of 6000l., South Sea stock, and he had only 5360l.; the latter sum was held only to pass, and the rest of the testator's personal estate was not obliged to make up the 6000l. But it would have been otherwise, if the testator had no stock at all. So in Jeffreys *v.* Jeffreys, 3 Atky. 120, where the tes-*tator devised 2702l. 3s. capital stock of the bank of England, and afterwards sold 702l. 3s. thereof, it was decreed, that as he had the stock at the time of making his will, he meant to give that very individual stock, and it was an ademption *pro tanto.* But in Pierce *v.* Snaueling, 1 Atky. 414, where the testator bequeathed two legacies, each of 5000l. stock, when he had only stock to the amount of 5000l. at the time of making his will or afterwards, it was held to be a general bequest, under the circumstances of the case. Where legacies are given out of bonds, securities, &c. and these fall deficient, there shall be an abatement amongst them, and it shall not affect other legatees. Pecuniary legatees must abate in proportion, but not specific legatees. 2 Equ. Ca. Abr. 557, pl. 22, cites 8 Vin. 424, pl. 39. A specific legatee, may compel a payment out of the specified article, if there be enough to pay debts. Birch *v.* Baker, Mosely, 376. Devise of a bond; the obligor afterwards became bankrupt, and the testator in his life time, received the dividends; this notwithstanding was held to be a specific legacy. Sadler *v.* Hobbs, 2 Bro. Cha. Rep. 108.

The general rule is established, that where a fund is pointed

[Cuthbert et al. *v.* Knight's Executors.]

out by the will, the legacies must be paid out of it.   Thus where a testator gave certain legacies in stock, and others without that addition, and then gave others, and directed stock to be sold to the amount, this made all the legacies, legacies of stock. Danvers *v.* Manning, Bro. Cha. Ca. 18.   So where testator re- citing, that he was possessed of a certain sum in navy bills, de- vised it ; this was held to be a specific legacy, and shall pass only such navy bills, as he held at his death. Pitt *v.* Camel- ford, 3 Bro. Cha. Ca. 160.   And where a testatrix gave nine legacies of 1000l. each, part of 14,500l. South Sea stock, it was held, that the legacies were specific.   Richardson *v.* Brown, 4 Ves. jr. 177.   Bequest of stock, if the testator had the stock at the time, it will be considered a specific devise. Seldwood *v.* Mildmay, 3 Ves. jr. 310.   And a specific legacy of stock was decreed, according to the value at the time it ought to have been transferred. Morley *v.* Bird, Ib. 631.

Legacies of debts have a strong analogy to stock devised.— Testatrix gave legacies to be paid within three months, out of a bond due to her ; the obligor afterwards paid to the testatrix the debt, and took up the bond ; the legacies are thereby adeemed. Badrick *et al. v.* Stevens *et al.* 3 Bro. Cha. Ca. 431.   The tes- tator gave to his sister, the interest of 300l. on bond, for life, and after her decease to her daughters, the interest on the bond at her death, with the principal ; the legacy is specific, and there being among the bonds one of the exact amount, it was held to refer to that, though an insolvent security, and the interest in *arrear at the death of the testator.   The inclination of the court is against specific legacies, but if it is clearly specific on the face of the will, it must prevail as such. Innes *v.* Johnston, 4 Ves. jr. 568, 573.

*490]

Mr. Ingersoll, for the plaintiffs.   It cannot be denied, that the court are bound to carry into effect the general intent of wills. 4 Ves. 325.   It is maintained here, that the general in- tent of the testator was, that $8000 of 6 per cent. stock, should go to the trustees, for the benefit of Mrs. Brewster, according to their real value on the 18th September 1798, when the will was made.   No particular certificates are given, and he is possessed of $370.99 in certificates of both descriptions, more than he has bequeathed.   There is no deficiency of assets out of which the legacy is payable.   In none of the authorities cited, was there any intention disclosed, to guard against a diminution of the fund ; nor such a residuary clause as the present, whereby according to the decision of this court in Clifton *et al. v.* Hassenclever *et al.* since confirmed in the High Court of Errors and Appeals, the legacies on a deficiency of personal estate would become chargeable on the lands.   I fully accede to the rule in 1 Ves. 424, that the circumstances of the case must determine whether the legacy shall be considered specific or general.   The residuary clause shews that a fund

[Stiles v. Jones et al.]

was provided and reserved to meet all contingencies. It is a legacy of quantity. The pronoun "my," does not precede the bequests of the 6 per cent. stock, though it occurs as to the deferred debt. But another circumstance is relied on, and the slightest hint which the testator may have given of his intention, ought to receive due weight. "The further sum of $600 is "given in money, in aid of, and by way of addition to the in-"come," &c. This phraseology is confined to this bequest alone ; and it appearing by an accurate calculation, that $8000, in nominal 6 per-cents. was diminished on the 18th September 1798, the sum of $533 60, the near coincidence of this amount with the $600 given in aid of the dividends and income, is strongly indicative of the mind of the testator. It cannot be deemed an ademption, when the testator is passive merely, as to the change of the property ; as where the instalments of public debt are forced on a creditor. According to the defendant's doctrine, if the testator had lived a few years longer, the dividends would have gone but a small way towards the support of Mrs. Brewster, and the maintenance and education of her children.

The court declared their opinion, that it did not appear on the *face of the will that this was a general legacy, but a specific one under all the circumstances. The $8000 was [*491 devised in 6 per cent. stock ; the testator was entitled to 6 per cent. stock as well as deferred debt, to the amount of the stock legacies he had devised. He distinguishes between the two kinds of stock which were of different relative values, and he gives the principal of $8000 to the trustees, as the same shall be paid off and discharged by the United States. Specific legatees have an advantage in this, that their legacies shall not abate on a deficiency of assets ; but they are subjected to other hazards, on the happening whereof they shall have contribution from the other legatees. 1 Wms. 540.

Judgment for the defendants.