## Daniel A. White, Judge, &c. *versus* Jacob B. Winchester.

A testator directs his executor to appropriate towards the support of a school, all the income of twenty-seven shares in one bank, ten and a half in another, and fifteen in an insurance company. When he made the will, he owned just so many shares in the two banks and the insurance company, but before his death he sold his twenty-seven shares in the first-mentioned bank. It was *held*, that the legacy was specific, and that the sale was an ademption *pro tanto*.

THIS was an action of debt on a probate bond, given by the defendant as the executor of the last will and testament of Dennison Wallis. It was brought for the benefit of the inhabitants of school district No. One, in the town of Danvers, and to recover a legacy which the executor refused to pay. The case came before the Court upon an agreed statement of facts.

The clause in the will on which the legacy depends, is as follows : — " Having the prosperity of the present and succeeding generation in view, I hereby order and direct my executors, or the survivor of them, to appropriate and expend, for and towards the support of a school or schools for the benefit of the whole district Number One, in which I now live, all the income of the following property (after deducting a reasonable sum for their or his attending to the same), to wit, twenty-seven shares in the Beverly bank, at Beverly ; ten and a half shares in the Marblehead bank, at Marblehead ; and fifteen shares in the Union Marine Insurance office, at Salem ; and in case either of said companies shall cease to continue, then my executors, or the survivor of them, shall put the principal on interest, to the best advantage ; and the income of the whole (except as above) shall be for ever appropriated to the above purpose, the income to be reckoned from the day of my decease."

The will was dated January 30, 1818.. The testator died August 15, 1825. The inhabitants of the school district seasonably demanded of the executor, that the income of twenty-seven shares in the Beverly bank should be appropriated and applied by him for the benefit of the district, agreeably to the direction of the will, but he refused to make such appropriation.

The testator, at the time of making his will, was the owner of ten and a half shares, and no more, in the Marblehead bank, the par value of which was 100 dollars a share, and of fifteen shares, and no more, in the Union Marine Insurance office, the par value of which was 80 dollars a share, and continued the owner until his death.

On the 3d of August, 1803, he was the owner of twenty-seven shares, and no more, in the Beverly bank, and continued the owner until the 13th of November, 1823, when they were sold and transferred by him. On the 30th of May, 1823, he pledged them as collateral security for money hired by him at the Beverly bank, and on the same day he gave to the bank his note for 1200 dollars, in the place of a note for the same amount, on which he was surety for one Upton, and which was taken up at that time by the testator, for the purpose of

commencing a suit against Upton. On the 24th of July following, the testator hired 200 dollars at the same bank, on the security of these shares. The note for 1200 dollars was paid about the 12th, and the note for 200 about the 15th of November, 1823 ; and in the opinion of the cashier of the bank, for the reasons stated in his deposition, the proceeds arising from the sale of the shares were applied to the payment of these notes. The par value of the shares, at the time of making the will, was 62 dollars and 50 cents, and has continued the same ever since.

For the purpose of showing the motives and inducements which operated on the mind of the testator in selling the shares in question, certain depositions were made a part of the case, their competency and effect being referred to the Court. From these it appeared, that in consequence of many persons becoming insolvent, he was unduly alarmed, and being unexpectedly called upon to pay notes which he had indorsed, he sold the shares, from an imagined necessity, to raise money, though in fact his credit was unimpaired and he might without difficulty have obtained a loan of the sum required.

If the Court should be of opinion, that the inhabitants of the school district could maintain their claim for the benefit of these shares, upon any principle of law or equity, within the jurisdiction of the Court, judgment was to be rendered for the plaintiff in such manner as the Court should order ; if otherwise, the plaintiff was to become nonsuit.

*Nov. 8th.*    *Saltonstall* and *Proctor*, for the plaintiff. The legacy of the twenty-seven shares was a bequest of so much stock in a particular fund, and a direction to the executor to purchase stock to that amount, if it were not found among the assets. Toller, 303 ; *Partridge* v. *Partridge*, Cas. Temp. Talb. 226.

It was not a specific legacy of the shares in the Beverly bank owned by the testator at the time of making his will. *Chaworth* v. *Beech*, 4 Ves. 565 ; *Walton* v. *Walton*, 7 Johns. Ch. R. 258 ; *Bronsdon* v. *Winter*, Ambl. 57 ; *Hambling* v. *Lister*, ibid. 401 ; *Sleech* v. *Thorington*, 2 Ves. sen. 563 ; *Ashburner* v. *M'Guire*, 2 Bro. C. C. 108 ; *Penticost* v. *Ley*, 2 Jac. & Walk. 207 ; *Purse* v. *Snaplin*, 1 Atk. 414, and

note ; *Coleman* v. *Coleman*, 2 Ves. jun. 640 ; *Gillaume* v. *Adderley*, 15 Ves. 384 ; *Mann* v. *Copland*, 2 Madd. R. 223 ; 2 Madd. Ch. Pr. 10 ; *Att. Gen.* v. *Parkin*, Ambl. 566.

The sale of the shares was not an ademption of the legacy. If the legacy was not specific, of course there was no ademption. But if it was specific, then the question is, what was the intention of the testator in making the sale ; and the circumstances of the case show that it was made, not to revoke the legacy, but to meet the testator's necessities. Swinb. 524 ; 2 Bro. C. C. 108; *Drinkwater* v. *Falconer*, 2 Ves. sen. 624 ; *Wood* v. *Penoyre*, 13 Ves. 336 ; 2 Madd. Ch. Pr. 93.

The only doubt in the case arises from the sale, and the burden of proof is on the defendant to show that thereby the testator intended an ademption. The authorities are clear, that it is only a question of intention. 7 Johns. Ch. R. 258 ; 3 Stark. Ev. 1715 ; *Pawlett's Case*, T. Raym. 335 ; *Avelyn* v. *Ward*, 1 Ves. sen. 420 ; *Bibb* v. *Thomas*, 2 W. Bl. 1043 ; *Swift* v. *Roberts*, 3 Burr. 1491 ; *Saville* v. *Blacket*, 1 P. Wms. 778 ; *Thomond* v *Suffolk*, ibid. 464.

*Merrill* and *Choate, contrà.* The bequest was an individual legacy, and was adeemed *pro tanto* by the sale of the shares. *Purse* v. *Snaplin*, 1 Atk. 414, 417 ; 2 Madd. Ch. Pr. 8, 9, 10, 89 ; Toller, 301, 331 ; 7 Johns. Ch. R. 262 , 2 Fonbl. 369, and notes ; *Hinton* v. *Pinke*, 1 P. Wms. 540 ; *Rider* v. *Wager*, 2 P. Wms. 328 ; *Lawson* v. *Stitch*, 1 Atk 508 ; *Heath* v. *Perry*, 3 Atk. 103 ; *Chaworth* v. *Beech*, 4 Ves. 566 ; *Innes* v. *Johnson*, ibid. 569 ; *Fryer* v. *Morris*, 9 Ves. 360 ; *Gillaume* v. *Adderley*, 15 Ves. 384 ; *Jeffreys* v. *Jeffreys*, 3 Atk. 120 ; *Selwood* v. *Mildmay*, 3 Ves. 306 ; *Barton* v. *Cooke*, 5 Ves. 461 ; *Sibley* v. *Perry*, 7 Ves. 529 ; 3 Wooddes. 535 ; *Long* v. *Short*, 1 P. Wms. 403 ; *Raymond* v. *Broadbelt*, 5 Ves. 199 ; *Ashton* v. *Ashton*, 3 P. Wms. 384 ; *Barker* v. *Rayner*, 5 Madd. R. 217. There is nothing in the circumstances of the sale to prevent it from operating as an ademption. The law infers an intent to adeem, from the subject of the bequest being destroyed. It is not necessary to prove that the testator passed a judgment definitively upon the question whether he would adeem, or that

White,
Judge, &c.
v.
Winchester.

52

April term
1828.

he should even know in what manner the sale would operate upon the bequest. *Stanley* v. *Potter*, 2 Cox, 180 ; 2 Stark. Ev. 739 ; 4 Ves. 574 ; 9 Ves. 360.

WILDE J. delivered the opinion of the Court. [After stating the nature and subject of the action.] It is agreed, that at the time of making the will (January 30th, 1818) the testator was the owner of the exact amount of stock bequeathed to the school district, in the several corporations named in the will ; and that afterwards, on the 13th day of November, 1823, he sold and transferred his shares in the Beverly bank ; so that the general question is, whether this sale was an ademption of the legacy *pro tanto*.

The case has been very fully and ably argued, and many cases have been cited, some of which appear to clash, though most of them, we think, may on close examination be satisfac torily reconciled. Perhaps no two cases can be found ex actly similar, and small circumstances may lead to decisions apparently contradictory. I shall not go over all these cases, for in questions relating to the construction of wills, the mind is often perplexed and misled, rather than instructed, by a multiplicity of cases ; especially when the question is as to the intention of the testator. The first question to be considered is, whether the legacy demanded is specific or general. If the object of the testator was to give the identical stock specified in the will, then the sale of a part would be proof of *animus revocandi*, and would amount to an ademption of the legacy *pro tanto*.

The general rule is, that if stock be bequeathed, and the testator owns the stock described, at the time of making the will, the bequest must be considered specific. *Selwood* v. *Mildmay*, 3 Ves. 310.

There is a strong case in Atkyns in support of this rule, which has a close resemblance to the case under consideration. In that case (*Jeffreys* v. *Jeffreys*, 3 Atk. 120) the testator had given to his daughters 2702*l.* 3*s.* capital stock in the bank of England ; and 2000*l.* capital stock in the English East India Company. At the time of making his will he had the exact amount of bank and India stock bequeathed to his daughters, but before his death he sold out a part of

his bank stock (702*l.* 3*s.*), and it was held that this sale of the bank stock was an ademption *pro tanto.* The master of the rolls makes a distinction, which seems very just, between a bequest of goods perishable in their nature, and that of durable property, as stock and the like. So also the circumstance, that the stock bequeathed and the stock the testator owned at the time exactly agreed, is much relied on as strong proof of the specific quality of the legacy.

In the case of *Ashburner* v. *Mc Guire,* 2 Bro. Ch. Rep. 108, the words of the bequest were, " I bequeath to W. B. my capital stock of 1000*l.* in the India Company's stock." The testator, at the time of making his will, was possessed of 1000*l.* East India stock, and no more. This stock he sold out before his death, and Lord *Thurlow* held that the legacy was specific and was adeemed by the sale.

In the case of *Badrick* v. *Stevens,* 3 Bro. Ch. R. 431, the testatrix bequeathed several sums of money to be paid out of a bond debt then due. The obligor in the bond paid the debt in the lifetime of the testatrix, and it was held that the legacies were thereby adeemed.

So in the case of *Innes* v. *Johnson,* 4 Ves. 569, the bequest was to the testator's sister, of the full interest of 300*l.* upon bond during her life ; and after her decease the interest on the said bond was given to her daughter. The testator had, at the time of making his will, a bond against the husband and son of the legatee, for 300*l.*, also one for 200*l.*, and divers other bonds against other persons. It was contended that this was a legacy of money, with reference to a particular fund, or a demonstrative legacy. But the master of the rolls held it a specific legacy of the interest on the bond for 300*l.*

In the case of *Fryer* v. *Morris,* 9 Ves. 360, E. I. bequeathed to C. P. such money as her executors should, after her death, receive on a note for 400*l.* And a short time before her death the note was paid, and the amount was by her deposited with a banker with whom she had no other money, where it remained at her death, except 10*l.* which she drew out. Sir *William Grant* held that the payment of the note was an ademption of the legacy.

5 *

These are strong cases to show that the legacy in question is specific and was adeemed as to the shares in the Beverly bank. But there are other cases, which seem to have been decided upon different principles.

In *Pawlet's Case*, T. Raym. 335, where the testator had given to his niece 500*l.* in the hands of his sister, the Lady Cholmeley, and due to him on her bond, it was held that the legacy was not adeemed, although the Lady Cholmeley had paid the bond during the lifetime of the testator, on the ground that it was not a specific legacy. So Lord *Camden* held, in the case of the *Att. Gen.* v. *Parkin*, Ambl. 566, that if a sum of money be given due on a bond, the legacy is not specific. But this decision is denied to be law by Lord *Thurlow*, after very full deliberation, in the case of *Ashburner* v. *Mc Guire*, already cited. It is however remarked by the lord chancellor in the case of *Coleman* v. *Coleman*, 2 Ves. jun. 639, (and the master of the rolls in the case of *Chaworth* v. *Beech*, 4 Ves. 556, seems to be of the same opinion,) that Lord *Camden* proceeded on the supposition, that the testator did not mean to refer to any particular bond or security, but that he intended to give the sum specified in the will out of any bond or security he might happen to have. And if so, it is said the case of the *Att. Gen.* v. *Parkin* may be sustained ; otherwise it must be considered as overruled by the case of *Ashburner* v. *Mc Guire*. The master of the rolls refers also to the case of *Lord Castleton* and *Lord Fanshaw*, 1 Eq. Cas. Abr. 298, in support of the case of *Ashburner* v. *Mc Guire*, which he says is an authority conclusive on the subject. It must, however, be admitted, that the distinctions which have been made, in some of the cases, between a specific legacy, and a pecuniary legacy payable out of a particular fund, are extremely nice.

In the case of *Rider* v. *Wager*, 2 P. Wms. 328, the question arose on the will of admiral Littleton, who among other things gave to the second son of Sir Harcourt Masters 500*l.*, part of the money owing to him by Sir Harcourt ; and the residue of the debt was given to his younger children. The legacy of 500*l.* was considered as a pecuniary or demonstrative legacy, while that of the residuum to the

younger children was held to be specific. This case appears to have been decided upon a distinction similar to the one taken by Lord *Camden*, between a legacy of a debt generally, and that of a certain sum due from a particular person, a distinction which Lord *Thurlow* thinks too slender for the basis of a decision.

In the case of *Orme* v. *Smith*, 1 Eq. Ca. Abr. 302, the words of the will are, " I give and devise to A. my good and only uncle, the sum of 500*l.*, that is to say, that bond and judgment he gave me for 400*l.* and 100*l.* in money." The uncle some time after sold an estate and paid off 320*l.* and took up the bond and gave a new bond for the remaining 80*l.*, and some time after the testator died. The uncle brought his bill for the legacy of 500*l.*, and the lord keeper decreed that the bond for the 80*l.* should be delivered up and the residue of the legacy should be paid. The counsel for the plaintiff laid hold of the distinction between voluntary and compulsory payments, which has long since been exploded. But whether the court went upon that ground, or upon the authority of *Pawlet's* case, does not distinctly appear. This case however and *Pawlet's* case are both relied on in the case of *Ford* v. *Fleming*, 2 P. Wms. 470. In that case A. by her will gave her granddaughter Mary Ford 40*l.* out of a debt due to the testatrix from J. S. for rent ; and the residue of the rent due was given to her grandson. After making the will the testatrix sued for these arrears of rent and received them. And it was held, that this was no ademption of the legacy, because the testatrix's suing for the rent might have been occasioned by her apprehension that the debt was in danger. It was said by counsel, *arguendo*, that this legacy being 40*l.*, could not be called a specific legacy, but was a gift of so much money, and that the rent was referred to as a fund for the payment of the legacy. And unless this case and *Pawlet's* case, and that of *Orme* v. *Smith*, can be sustained on this ground, I think they are manifestly opposed to very many later authorities.

The case of *Coleman* v. *Coleman*, 2 Ves. jun. 639, was decided on peculiar circumstances. In that case the testator gave the interest of a particular bill of exchange to his

wife for life, and directed that after her death the bill should be sold, and the proceeds of sale divided among certain persons named in the will. It appeared that this bill was the bulk of the testator's fortune. It was paid to the testator after he had made his will, in the usual course in which the company paid such bills in rotation ; and it was held, that the legacy was not thereby adeemed. But this case was decided on the manifest intention of the testator, and not on the distinction between specific and pecuniary legacies.

Whether these, and other cases, can be fully reconciled or not, they certainly all agree as to one point, namely, that when the question is, whether a legacy is specific or pecunia ry, it must be decided by the apparent intention of the testator. Now when one by his will gives a certain amount of stock, or the income of stock, in a particular bank, or other corporation, and at the time of making the will, he is owner of the exact amount of stock given, the presumption is strong, that he intended to give the stock of which he was the owner. Such is the case under consideration. The testator was the owner of the exact amount of stock described in the will, and we must understand, nothing in the language of the will appearing to the contrary, that it was the income of this particular stock which he intended to appropriate for the use of schools. The provision made in case either of the companies should be dissolved, confirms this construction, and there is nothing in the language of any part of the will which renders it doubtful. This legacy therefore must be considered as specific and not pecuniary.[1]

But it has been argued, that if it is so considered, there is nothing in the case to indicate an intention on the part of the testator to adeem the legacy. It is however clearly settled, that the alienation of a specific legacy is presumptive proof, and it is strong proof, of an intention to adeem. It is for the plaintiff to show circumstances sufficient to repel this legal presumption, and certainly no such circumstances appear.

---

[1] See Ram on Assets, &c. 383 to 387, (No. 23 Law Libr. 254 to 256,) and cases there cited; Toller on Executors, (4th Am. ed.) 301 to 314 ; *Walton v. Walton,* 7 Johns. Ch. R. 258 ; *Cuthbert v. Cuthbert,* 3 Yeates, 486.

The same considerations which induced the testator to alienate a portion of his stock, might have induced him also to diminish his bounty to the school district ; and his suffering his will to stand unaltered after the sale of the Beverly bank stock, is a circumstance tending to strengthen this supposition. Upon the whole, therefore, we are of opinion that the sale of the Beverly bank stock is a sufficient indication of the testator's intention to adeem the legacy *pro tanto ;* and that the other facts in the case do not repel the legal presumption arising from this circumstance.[1]

*White, Judge, &c. v. Winchester*

*57*

*Plaintiff nonsuit.*

---

[1] See Fonbl. Eq. (3d Am. ed.) 597 to 599; Toller on Executors, 330 to 334; *Walton* v. *Walton*, 7 Johns. Ch.. R. 262; *Cogdell* v. *Cogdell*, 3 Desaus. 384, 2 Williams on Executors 820 to 827.