TIFFT *against* PORTER.

A legacy is *general* and not *specific*, unless by its terms it indicates a particular part of the testator's estate as the subject of the bequest.

Accordingly, where the testator owned 360 shares of Cayuga County Bank stock, and he bequeathed 240 shares of Cayuga County Bank stock to one legatee and 120 shares to another, but without indicating that the shares bequeathed were to be taken from those which he owned at the time of his death, *held* the legacies were general.

The fact that a general legacy of bank stock is made to a widow in lieu of dower, will not give her the income which may have accrued upon such stock from the time of the testator's death until its transfer to her. *Semble.*

On the 16th of June, 1849, Henry Tifft, the husband of the plaintiff died. At the time of his death he owned three hundred and sixty shares of the stock of the Cayuga County Bank. He left a will containing among others the following bequests: "Second: I give, devise and bequeath unto my wife Ursula Tifft, 240 shares of bank stock in the Cayuga County Bank, at Auburn, also all my household furniture, books, wearing apparel, all of which property and bank stock above mentioned are to be delivered to her, as soon as may be after letters testamentary shall have been granted, and issued on this will, and are in lieu of dower. Third: I give, devise and bequeath, to Harriet S. Glover, one hundred and twenty shares of stock in the Cayuga County Bank, at Auburn, to be transferred to her as soon as letters testamentary shall be issued and granted on this will. * * * Sixth: I give, devise and bequeath, unto my brothers, Wyatt R. Tifft, George Tifft, Solomon Tifft and Hiram Tifft, the residue and remainder of my estate, real and personal, to be divided equally among them, share and share alike." The defendant and David C. Stewart were appointed executors of the will.

On the 14th of August, 1849, a dividend of one dollar per share was declared by the Cayuga County Bank paya-

ble on the first day of September ensuing. On the 16th of the same month, the will was proved before the surrogate of Cayuga county, and letters testamentary were issued to the executors. On the 23d of the same month, the executors transferred to the plaintiff two hundred and forty shares of the stock pursuant to the bequest. Subsequently, when the dividend declared on the 14th became payable, the defendant as executor drew the dividend upon these shares, amounting to $240. The plaintiff thereupon brought this action for the money as received to her use. It was tried at the Cayuga circuit in February, 1851, before Mr. Justice TAYLOR, who upon the facts shown denied a nonsuit and a verdict was rendered for the plaintiff for the amount received with interest. A judgment rendered upon the verdict was affirmed at a general term held in the seventh district, in January, 1852. The defendant appealed therefrom to this court.

*J. Porter,* appellant, in person, insisted that the bequest to the plaintiff was a general legacy, to be paid to her after the letters testamentary should have issued, and not a specific bequest of a part of the stock in the Cayuga County Bank owned by the testator at the time of his death, for the reason that there was nothing in the terms or language employed, to indicate that the testator intended it to be taken from that particular stock. He cited in support of this position, *Roper on Leg.* 206, 207, 212; 2 *Williams on Exrs.* 197, 198, 199, 993, 999; *Davis* v. *Cain,* 1 *Ired. Eq. R.* 45; *Sibley* v. *Perry,* 7 *Ves.* 524; *Cogdell* v. *Cogdell,* 3 *Dess. Ch. R.* 382; and *Willson* v. *Brownith,* 6 *Ves.* 180.

*N. Hill, Jr.,* for respondent, contended, I. That the bequest was specific, and took effect from the time of the testator's death, and that the plaintiff was entitled to the two hundred and forty shares of stock with all the earnings which had accrued at that time; and that the duty of the executors was simply to transfer it to her. He cited

*Wigram on Exr.* 2*nd Ed. p.* 6; 2 *Edw. Ch. R.* 236, *Cogswell*
v. *Cogswell;* 3 *P. Wms.* 384, *Ashton* v. *Ashton;* 2 *Ves.* 641,
(*note* 2) *Coleman* v. *Coleman;* 4 *Ves.* 572, *Innes* v. *Johnson;* 3
*V. & B.* 5, *Smith* v. *Fitzgerald;* 4 *Ves.* 751, *Kirby* v. *Potter;*
*Williams on Ex.* 1232; *Ib.* 1221; 2 *Roper Leg.* 227, 3*d Ed.*

II. That the bequest being to the widow in lieu of dower,
and no other provision having been made for her, she was
entitled to the income arising from it from the time of the
testator's death. (6 *Paige,* 298, *Williamson* v. *Williamson;*
2 *Bland,* 264, *Contee* v. *Dawson; Dayton's Ex.* 162.)

JOHNSON, J. — A legacy is general, when it is so given as
not to amount to a bequest of a particular thing or money
of the testator distinguished from all others of the same
kind. It is specific, when it is a bequest of a specified part
of the testator's personal estate which is so distinguished.
(*Wms. on Ex.* 838.) In those cases in which legacies of
stocks or shares in public funds have been held to be
specific, some expression has been found from which an
intention to make the bequest of the particular shares of
stock could be inferred. Where, for instance, the testator
has used such language as, " my shares," or any other
equivalent designation, it has been held sufficient. But
the mere possession by the testator at the date of his will
of stock of equal or larger amount than the legacy, will not
of itself make the bequest specific. (*Wms. on Ex.* 842; 1
*Roper on Leg.* 2067.) The cases of *Davis* v. *Cain,* 1 *Iredell
Eq. R.* 309, and *Robinson* v. *Addison,* 2 *Beav.* 515, are
directly in point. In the first case the bequest was, " 25
shares of the capital stock of the State Bank of North
Carolina." The testator owned 25 such shares. The
court say, " The legacy is not specific. If he had said
my 25 shares of bank stock it would have been a specific
legacy." The other case was a bequest of " five and a half
shares in the Leeds and Liverpool Canal and all benefit
and advantage thereof." The will contained two other
bequests, each of five shares, in the same terms. At the

time of making his will, testator owned fifteen and one half shares of said stock. The only question was whether the legacies were specific. The master of the rolls, (Lord Langdale,) in giving his judgment said, "In the gift the testator has used no words of description or reference by which it appears that he meant to give the specific and particular shares which he then had. Various arguments depending on the general scope and effect of the will were used for the purpose of showing that the testator, in giving the precise number of shares which he possessed, must have had those shares and none other in his contemplation, and consequently must have meant specific gifts of them. It is however clear that the testator, if he had meant to give only the shares which he had, might have designated them as his: that the mere circumstance of the testator having at the date of his will, a particular property of equal amount to the bequests of the like property which he has given, without designating it as the same, is not a ground upon which the court can conclude that the legacies are specific." So in *Partridge v. Partridge, Ca. temp. Talbot,* 226, a bequest of " £1000 capital South Sea stock to wife for life with power of disposition among children," although the testator when he made his will had more than that amount of stock, was held to be general and not specific. To the same effect are *Simmons* v. *Vallance,* 4 *Bro. C. C.* 345; and *Sibley* v. *Perry,* 7 *Ves.* 524. This last case is worthy to be more particularly mentioned, because in it there was a direction to transfer £1000 stock in the public funds called the 3 per cent. consolidated within 3 months after testator's decease," and a similar direction "to deliver" is contained in the will of the testator in this case. Lord Eldon held the bequest not specific. In *Ashton* v. *Ashton, Ca. temp. Talb.* 152, a bequest of £6000 South Sea annuities in trust to sell and lay out the proceeds, was held specific; the direction to sell being inconsistent with giving such a meaning to the words as would authorize the executors to buy for the purpose of selling.

The same argument plainly does not apply to a direction to transfer. That would be alike appropriate whether the testator had, or had not, the stock.

We were referred upon the argument to *Everitt* v. *Lane*, (2 *Ire. Eq. R.* 548,) which holds a contrary doctrine. Testator bequeathed to his wife, " one year's provisions, five head of horses, her choice; one carriage, five sets of farming tools, her choice; one set of blacksmith's tools, to her and her heirs and assigns forever." The court, after observing that the expression, " her choice," renders the bequests specific to which it was attached, say that the " one carriage" and the " one set of blacksmith's tools," intended by the testator, are put beyond doubt by the admitted fact that he had but one carriage and one set of blacksmith's tools. When upon the face of the will it appears that the testator meant to dispose of something in kind, in the application of the bequest to its subject matter, it may be shown that he had but one of the kind to dispose of. For this, *Innes* v. *Johnson* (4 *Ves.* 568,) is cited: but that case turned upon the point that the words, " the said bond," put it beyond doubt that the expression £300 upon bond, was intended of a certain specific bond. Now there was not in the will any thing to show that the expression " one carriage," meant any particular carriage, any more than there was to show that " one year's provisions" did not refer to provisions then owned by him, and yet as to the latter the court held it general, while the former was held to be specific." This case is in conflict with the other cases before cited, and ought not to be followed. It is true that the will of the testator in this case, after giving " 240 shares of bank stock," does refer to the bank stock above mentioned; but this expression seems to me as well applicable to such bank stock as the executors might purchase, as to that which the testator then had on hand. It would, I think, be going too far upon an equivocal expression of this sort, to hold this to be a specific legacy, which without it would clearly be general. (1 *Rover on Leg.* 213.)

Tifft *against* Porter.

The inclination of the courts to hold legacies to be general, rather than specific, and on which the rule is based that to make a legacy specific, its terms must clearly require such a construction, rests upon solid grounds. The presumption is stronger that a testator intends some benefit to a legatee, than that he intends a benefit only upon the collateral condition that he shall remain till death, owner of the property bequeathed. The motives which ordinarily determine men in selecting legatees, are their feelings of regard, and the presumption of course is that their feelings continue and they are looked upon as likely to continue. An intention of benefit being once expressed, to make its taking effect turn upon the contingency of the condition of the testator's property being unchanged, instead of upon the continuance of the same feelings which in the first instance prompted the selection of the legatee, requires, as it ought, clear language to convey that intention. The rule as settled, accords best with the dictates of experience as to the probable purposes which actuate men in disposing of their property by will.

The judgment at the general and special terms should be reversed, and a new trial granted, costs to abide the event.

RUGGLES, Ch. J., and JEWETT, MORSE, and GARDINER, JJ., concurred in the opinion of Judge Johnson.

TAGGART, WILLARD and MASON, JJ., dissented.

WILLARD, (dissenting.)   If the testator had sold and delivered two hundred and forty shares of bank stock in his life time, there can be no doubt that the purchaser would have been entitled to the dividends which might at any time thereafter, be declared. And it would have made no difference that the dividend had accrued upon the transfer Like the interest upon a bond or note, it would have passed to the assignee with the transfer of the subject out of which it arose.   It is on this principle that rent passes with the

SEL. IV.—66

of her husband to be assigned for dower, or commence pro-
ceedings for the recovery thereof. (1 *R. S.* 741-2, § 13, 14.)
grant or assignment of the reversion. (4 *Kent Com.* 355-6;
*Co. Litt.* 143, *a; id.* 151, *b.*) It is an incident, though not
an inseparable incident of the reversion. And the incident
follows its principal, unless it be separated by express ex-
ception. (*Id.*) In like manner a party having accepted the
principal, can not afterwards maintain an action for the
interest. (*Tillotson* v. *Preston,* 3 *J. R.* 229.)

The legacy in this case was given in lieu of dower. The
legatee is, therefore, to be treated as a purchaser, and en-
titled to all the incidents resulting from that relation. This
is the well settled doctrine, and applies to every case where
there is any valuable consideration for the testamentary
gift. Thus in *Burridge* v. *Bradyl,* (1 *P. Williams,* 127,) a
general legacy was given to the wife in consideration that
she release her dowry, and it was held by Ld. Ch. Cowper,
that she was to be treated as a purchaser, and her legacy
to be taken as a specific devise, and to be preferred before
a pecuniary legacy. Although Ld. Ch. Parker, in *Hinton*
v. *Pinke,* (1 *P. Williams,* 539,) questioned the part of the
above decision which converted a general into a specific
legacy, yet in other respects it was not disturbed; and it
was treated by Lord Hardwick in *Blower* v. *Morret,* (2 *Ves.*
420,) as correctly decided, and mainly upon the principle
that the widow was a purchaser. The fact that the wife,
in *Burridge* v. *Bradyl, supra,* was required to release her
dower, was treated by Sir Thomas Clark, master of the
rolls, in *Davenhill* v. *Fletcher,* (*Ambler,* 244,) as of no import-
ance, because if the legacy be given in full of dower, or in
lieu of dower, the acceptance of it is an effectual bar of
dower, and a release if need be, will be required to be given.
The Revised Statutes have provided for this case, and have
enacted that when a widow is entitled to an election, she
shall be deemed to have elected to take the devise or pe-
cuniary provision in lieu of dower, unless within one year
after the death of her husband she shall enter on the lands

Tifft *against* Porter.

Any other unequivocal act of election is no doubt sufficient, and in the present case, the receiving of the stock assigned to her, and the commencement of this action, determine her election.

This doctrine is more fully established in the recent case of *Heath* v. *Dindy*, (1 *Russell's Ch. Cases*, 543,) where a legacy in lieu of dower was held not to abate on deficiency of assets, and the legatee was treated as a purchaser. Chancellor Walworth, in *Williamson* v. *Williamson*, (6 *Paige*, 305,) follows the same rule, and recognizes the doctrine of *Heath* v. *Dindy* and *Davenhill* v. *Fletcher*. And in *Wood* v. *Vandenburgh*, (6 *Paige*, 277,) the chancellor held that when legacies are founded upon a person's indebtedness, or other valuable consideration, or are charged with the payment of other legacies, the legatees take as purchasers, and the legacies do not abate except as between the legatees.

The testator in the residuary clause of the will, " gives, devises and bequeaths " to his brothers by name, " the residue of his estate, *real* and *personal*, to be divided equally among them, share and share alike." This raises the presumption, that he had real estate out of which his widow could have been endowed, had he not made a pecuniary provision in lieu of dower. The legacy to her relieves this real estate from the incumbrance of dower. The residuary devisees are benefited to that extent by the legacy to her. That legacy is the consideration for the removal of that incumbrance. She is therefore to be treated as a purchaser, and as such she was entitled to the two hundred and fifty shares of bank stock on the death of the testator, and of the dividends thereafter to be declared. I think the judgment of the supreme court should be affirmed.

Judgment reversed.

# CASES

ARGUED AND DETERMINED

IN THE

# COURT OF APPEALS

OF THE

# STATE OF NEW YORK,

IN OCTOBER, 1853.