WILLIAM BEVAN, MARY ANN BEVAN AND MARGARET E. HEATON, APPELLANTS, *v.* CATHARINE COOPER AND JOHN A. COOPER, EXECUTORS, ETC., OF WILLIAM COOPER, DECEASED, AND OTHERS, RESPONDENTS.

*Will — specific and general legacies — Charge upon real estate — by implication.*

Nothing can be abated from specific legacies, because the estate of the testator turns out to be insufficient to pay the general legacies. It is the duty of executors to turn over specific legacies at the end of one year, with all the advantage that would have accrued to the legatees, had the property thus bequeathed been deliverable when the will took effect.

Legacies are primarily payable out of the personal estate, and are not payable out of the real estate, unless there be in the will an express or implied charge of such legacies upon the real estate.

Accordingly, *held,* that where a testator makes certain general bequests and a devise of a specific piece of real estate, and then grants all the *residue of his real* and personal estate to his executors, in trust, that if the personal property is insufficient to discharge the legacies, they must be paid pro rata, and are not a charge upon the real property.

*Semble,* that the clause as to the residue of the estate would charge by implication the real estate to the amount unpaid on the legacies, if there had not been a specific devise of a portion of the real estate.

APPEAL from the surrogate's decree on the final settlement of executors' accounts. The testator, by his will, after directing the payment of his debts and funeral and testamentary expenses, gave:

First. To his wife, all his household goods.

Second. To his brother, John Cooper, all leasehold property, or chattels real, owned or possessed by him at the time of his decease, also all capital stock of the People's Bank owned by him, and released his said brother from all claims against him, and directed his executors to cancel all bonds and mortgages held against him.

Third. He then gave to William Bevan and Mary Ann Bevan, each, the sum of $5,000, and to Margaret E. Heaton the sum of $10,000.

Fourth. He gave to Joseph Beachum all his real and personal property in Tuscarora, Pennsylvania.

Fifth, and lastly, he gave all the rest and residue and remainder

of his estate, real and personal, to executors, in trust for certain uses and purposes specified in the will.

The testator does not direct out of what fund or property the legacies to Mr. and Mrs. Bevan and Mrs. Heaton shall be paid.

*H. H. Anderson, Rufus T. Andrews* and *Wm. T. Monteverde,* for the appellants.

*Flanagan & Bright,* for John Cooper's executors, respondents.

*Mann & Parsons,* for Catharine Cooper.

*Horace W. Wingate,* guardian *ad litem,* for the infants.

DAVIS, P. J.:

It does not seem to be controverted by the appellants but that the legacies to John Cooper were specific. The will bequeathed to John Cooper, the brother of the testator, all leasehold property or chattels real, owned or possessed by him at the time of his decease, also all capital stock in the People's Bank of the city of New York, owned by him. It also releases him and his estate from all claims that the testator had or might have against him ; and orders and directs the executors to cancel and discharge every bond and mortgage he holds against him and his property, and to execute, acknowledge and deliver all necessary or proper discharges thereof. At the time of his decease the testator held two parcels of leasehold property, situated in the city of New York. He also held 141 shares of the capital stock of the People's Bank which he owned when he made his will, and 200 shares of the same stock purchased by the testator a few days before his death, and two bonds and mortgages made by John Cooper to the testator to secure the different sums therein mentioned.

It was manifestly the intention of the testator to make the legacies to John Cooper specific, and the language used by him is quite sufficient to declare that intention. It amounts to a bequest of particular things distinguished from the general property of the testator, and from all other things of the same kind ; and it is quite clear that if the specific things named, or any portion of

them, had been disposed of by the testator before his death, the legacies would have been adeemed, either wholly or *pro tanto*, in so far as the disposition went. (*Tifft* v. *Porter*, 8 N. Y., 516; *Kirby* v. *Potter*, 4 Vesey, 748; *Walton* v. *Walton*, 7 Johns. Ch., 258.) Nothing can be abated from specific legacies, because the estate of the testator turns out to be insufficient to pay the general legacies.

The point is made, however, on the part of the appellants, that as there is no time specified in the will for the payment of legacies, they become payable at the expiration of one year from the issuing of letters testamentary, and that the specific legacies to John Cooper, including the leasehold property, did not pass to him until the expiration of one year; and it is claimed, therefore, that the rents collected by the executors from the leasehold property, and the dividends on the stock of the People's Bank, and the interest on the bonds and mortgages to be discharged, for one year from the granting of the letters, which amount to nearly enough to pay the general legacies, should have been applied towards their payment, *pro rata*, if insufficient to pay the whole.

It is undoubtedly true that legacies are not payable until after the expiration of a year from the granting of letters testamentary, unless the will directs them to be sooner paid, and that legacies, as a general rule, do not draw interest before they become legally payable. (*Bradner* v. *Faulkner*, 12 N. Y., 472; 2 R. S., 90, §§ 43, 45; Edmonds' Statutes at Large, vol. 2, p. 92.)

Section 45 of the Revised Statutes (*ubi supra*) declares that, after the expiration of one year from the granting of letters testamentary, or of administration, the executors or administrators shall *discharge* the specific legacies bequeathed by any will, and *pay* the general legacies if there be assets; and if there be not sufficient assets, then an abatement of the general legacies shall be made in equal proportion. It will be observed that the general legacies are to be paid at the expiration of the year, and that they are subject to abatement, but the specific legacies are to be *discharged*. In respect to the latter, the duty of the executor is to make them over, or deliver them specifically to the legatee, in the substantial condition in which they were when the will became operative.

Whatever accretions have grown out of them belong to and go

with the principal thing to the legatee. The policy of the statute in postponing their discharge for a year after the taking out of the letters, is to preserve the rights of creditors which, being superior to those of all classes of legatees, may, under certain circumstances, attach to specific bequests, and require their use by the executors in payment of debts. In this case no such exigency arose, and therefore it was the duty of the executors to make over the specific legacies with all the advantages that would have accrued to the legatees had the property thus bequeathed been deliverable when the will took effect.

It appears that on payment of the debts out of the personal estate of the testator, nothing is left for the payment of the general legacies out of that property. The testator left real estate of considerable value. By the residuary clause of his will, he devised and bequeathed all the rest, residue and remainder of his estate, real and personal, to the executors of his will, in trust for certain uses and purposes, to be executed for the benefit of his wife and children. It is claimed by the appellants that the operation of the clause disposing of the residuary estate is to charge the general legacies to them, amounting in all to $20,000, upon his real estate in default of personal estate out of which they can be paid.

It is the established rule, that legacies are primarily payable out of the personal estate, and are not payable out of the real estate unless there be in the will an express or implied charge of such legacies upon the real estate of the testator. *Lupton* v. *Lupton* (2 Johns. Ch., 623), is a leading case, and expresses with great force and clearness the general rule. In this case, there is no express charge of any of the legacies upon the real estate. The question is, whether there is an implied charge in the language of the seventh clause of the will which disposes of the residuary estate of the testator, both real and personal. Under the authorities, the language used in the seventh clause of the will would undoubtedly create an implied charge, if the other provisions of the will did not contain dispositions of any thing more than the personal estate. In *Shulter's* v. *Johnson* (38 Barb., 80), this question was quite fully discussed, and the conclusions arrived at, after a more careful examination than we are now able to give, seem to be sustained by the authorities. (*Keeling* v. *Brown*, 5 Ves., 359; *Wood* v. *Vandenburgh*, 6 Paige

284; *Myers* v. *Eddy*, 47 Barb., 263; *Kinnier* v. *Rogers*, 42 N.Y., 531; *Lupton* v. *Lupton*, *supra*.)

But, in this case, it appears by the sixth provision of the will that the testator had made a previous devise of a portion of his real estate. That clause devises all the real and personal property owned by him at Tuscarora, in the county of Schuylkill, in the State of Pennsylvania, and its necessary operation was to create a rest, residue and remainder of his real estate precisely as the previous disposition of personalty had created a residue of that part of his estate. We think it, therefore, well settled by the authorities that the bequests given to the appellants are not charged by the will upon the real estate of the testator. It is obvious that the testator supposed his personal estate would be sufficient to pay off all the bequests, specific and general, as well as his debts and funeral expenses, and leave a residue to form a part of the trust fund created by the seventh clause. The language of the seventh clause, in which he directs his executors to invest the residue of his personal estate in good securities for the purposes of the trust he thereby created, indicates clearly that such was his expectation, and that he did not suppose it necessary to make any charge upon the real estate of any portion of the debts or legacies.

There is no sound reason why a pecuniary legacy should take effect sooner than a devise of lands; and, in this case, the trust of the real estate, which is created by the seventh clause, is for the benefit of the wife and children of the testator, the more natural objects of his bounty.

His intention seems to us manifest to give to them, or rather to the trust created for their benefit, all of his real estate except the portion specifically devised by the sixth clause. That intention will be defeated if the real estate must be now charged with the deficiency of about $20,000, necessary to make up the legacies given to other and more distant relatives or friends.

There is no manifest intention to be found in the will that they should enjoy his bounty in preference, and to the prejudice of his widow and children; and under the established rules of construction, no such intention can be inferred from, or imported into the will, under the circumstances of the case, from the language which he used.

The decision of the learned surrogate appears to have been correct, and the decree appealed from must be affirmed.

Brady and Daniels, JJ., concurred.

Decree affirmed.