In the Matter of MARTHA LENDLE, as Executrix of AUGUST LENDLE, Deceased, Respondent. SOPIE PFEIL et al., Appellants.

(Argued March 21, 1929; decided April 16, 1929.)

*Bernard Hershkopf, Henry P. Velte* and *James Harte Levenson* for Sophie Pfeil et al., appellants. The fundamental purpose of a will is to meet the situation with respect to the testator's property which exists when he dies. It is with that time in mind that a will is drawn,

and manifestly it is of that moment that its terms speak and have effect, in the absence of clear language to the contrary. (*Matter of Bump*, 234 N. Y. 60; *Brundage* v. *Brundage*, 60 N. Y. 544; *Matter of Sargent*, 215 App. Div. 639; *Hirsch* v. *Bucki*, 162 App. Div. 659; *Waldo* v. *Hayes*, 96 App. Div. 454; *Pruyn* v. *Sears*, 96 Misc. Rep. 200; *Matter of Ralph*, 91 Misc. Rep. 373.) The respondent's assumption that the various mark legacies to the German relatives are specific legacies is clearly unwarranted. (*Brundage* v. *Brundage*, 60 N. Y. 544; *Crawford* v. *McCarthy*, 159 N. Y. 514; *Matter of King*, 122 App. Div. 354; *Pruyn* v. *Sears*, 96 Misc. Rep. 200, *Matter of Hess*, 120 Misc. Rep. 372; *Matter of Thompson*, 217 N. Y. 111; *Chemical National Bank* v. *Butt*, 123 Misc. Rep. 575.)

*Thomas D. Austin* for Ludwig Lendle, Jr., et al., appellants. In the absence of clear and unequivocal language to the contrary a will speaks and has effect as to conditions in existence at the date of the death of the testator. (*Byrnes* v. *Baer*, 86 N. Y. 216; *Lynes* v. *Townsend*, 33 N. Y. 563; *Brundage* v. *Brundage*, 60 N. Y. 544; *Matter of Bump*, 234 N. Y. 60.)

*Charles J. Lane* for respondent. The testator's intention controls the construction of his will. (Davids New York Law of Wills, 923; *Matter of Hendrickson*, 140 App. Div. 391; *Matter of Thompson*, 271 N. Y. 111; *Matter of Hoffman*, 201 N. Y. 247; *Matter of Title Guarantee Co.*, 195 N. Y. 339; *Matter of Sargent*, 211 N. Y. Supp. 778; *Lane* v. *Albertson*, 78 App. Div. 607; *Wilson* v. *Lynt*, 30 Barb. 124; *Dowd's Will*, 8 Abb. [N. C.] 118; *Close* v. *Farmers Loan & Trust Co.*, 121 App. Div. 528; 195 N. Y. 92; *Wright* v. *Wright*, 140 App. Div. 125; *Robinson* v. *Martin*, 138 App. Div. 310; 200 N. Y. 159; *Schuler* v. *Schuler*, 137 App. Div. 515; *Kahn* v. *Tierney*, 135 App. Div. 897; 201 N. Y. 516; *Boardman* v. *Hitchcock*, 136

App. Div. 353; 202 N. Y. 622; *Simpson* v. *Trust Company of America,* 129 App. Div. 200; 197 N. Y. 586; *Matter of ·Gilman,* 65 Misc. Rep. 409; *Matter of Barton,* 64 Misc. Rep. 242.)

POUND, J. The question is as to the meaning of certain general legacies contained :n the will of testator payable in German marks. Testator was a native of Germany, domiciled in the United States and residing at Forest Hills, New York. On September 17, 1920, he executed his last will and testament. He first gave to his wife, Martha Lendle, a legacy of $50,000, " to be paid to her in full before payment of other legacies hereinafter made." He then gave legacies to his near relatives in Germany; to his mother, Wilhelmine Lendle, 200,000 marks; to his sister, Sofie Pfeil, 100,000 marks; to his brother, Ludwig Lendle, 100,000 marks; to his nephew, Ludwig Lendle, Jr., 25,000 marks; to his niece, Albertina Lendle, 25,000 marks, and to Corps Borussia at the University of Tubingen, 25,000 marks as a memorial to his brother, the income to be used in the purchase of books. These legacies total 475,000 marks. He directed that all transfer taxes on such legacies be paid from the residue of his estate and then devised and bequeathed such residue to his wife for life, remainder over to his issue or to his heirs and next of kin. He died on March 29, 1927. His mother had predeceased him. Her legacy by the terms of the will passed to his sister and brother. He left no issue.

At the time of executing the will testator had property in Germany and in the United States. It is said that his property in Germany was of the value of 824,053 marks and his property in the United States was of the value of $113,616. When he died he left a net estate of $322,095.23.

In the Surrogate's Court it was held that the legatees were entitled to be paid in dollars at the prevailing rate

of exchange of the mark at the time of testator's death, viz., $0.2371, amounting to $112,622.50 in all. The Appellate Division held that the testator's intention was to make the bequests in marks at the current rate of exchange on the day of the execution of the will, viz., $0.0153, amounting to $7,267.50 in all.

The courts below have proceeded on a misconception of the nature of the bequests payable in marks. The bequests were of German marks which are to be regarded, not as a measure of value, but as a commodity. They are like a general bequest of stock or bonds, to be satisfied in kind. (*Tifft* v. *Porter*, 8 N. Y. 516; *Evans* v. *Hunter*, 86 Iowa, 413; 17 L. R. A. 308.) If the testator had never owned any marks or having had them to the amount of 475,000 marks had disposed of them in his lifetime, it would have been the duty of the executrix to procure German marks with which to satisfy the legacies. The question is one not of the proper measure of damages for breach of a contract payable in foreign money, as in *Hoppe* v. *Russo-Asiatic Bank* (235 N. Y. 37), but of the meaning of a bequest payable in specie. At the time of making the will the testator intended that the legacies should be paid in marks when he died. No other intent can be read into it. The will contains no intimation that when testator gave general legacies of marks he intended to give legacies payable in dollars at the prevailing rate of exchange, either at the time he made the will or at the time of his death.

After the testator executed his will the German paper mark depreciated to the vanishing point and became practically worthless. In 1924, before his death, it was withdrawn from circulation and the German government re-established the mark on a gold basis at the value of $0.2371, at which it has since approximately remained. Did the testator intend to make the legacies payable only in depreciated paper marks? If so, the legacies are reduced in value to the nominal sum of six cents, for at

the time of his death the paper mark had been withdrawn from circulation. Or, did he intend to make them payable in whatever passed as a German mark at the time of his death? These are the alternatives presented for our choice. If at the time of a depreciated paper currency a testator provides in his will for legacies in dollars, the legacy is payable in any money that is legal tender at the time of his death. The paper dollar may have shrunk in value or it may have risen to a parity with gold, or a gold standard may have been established. True the domestic dollar is regarded as a medium of exchange and not as a commodity but the analogy remains. Testator saw the paper mark dwindle in value. He said in 1923: " I must change my will because I want to give my relatives something and just now they would not get anything." He did not change his will. He wanted his relatives to have something. If he had intended the legacies to be payable in marks as of the time when he made the will he could have made them payable in dollars. But he was sagacious and experienced. He made the legacies payable in marks so that if the mark became worthless before his death, the legacies would dwindle in proportion. It is fair to assume that he still had faith in the stabilization of the German currency and that he intended his legatees to have the benefit thereof if it occurred. He had been buying real property in Germany with depreciated marks before he made his will and had profited thereby. He had, between the making of the will and his death, seen the fall and the rise of the mark. It is inconceivable that he intended to cut off his German relatives and enhance the life estate of the wife at their expense. To his mind the normal mark must at all times have been the mark as he knew it before the World War. Fluctuations were the symptoms of a disease which might be fatal but from which the patient might recover. The legacies are payable in marks, not in dollars, and in marks which

pass as such in the market at the time the legacies are paid.

The decree of the surrogate is substantially correct in result although not in form. As no point is made of this irregularity, it may stand.

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.