In the Matter of the Construction of the Will of EDITH V. M. HARDENBERGH, Deceased.

Surrogate's Court, Ulster County, February 4, 1953.

*Walter J. Miller* for Margaret E. Osterhoudt, petitioner.

*Hugh R. Elwyn,* special guardian for Daniel K. Hardenbergh and others, infants.

STERLEY, S. This is a proceeding brought for the purpose of obtaining a determination as to the validity, construction and effect of the bequests contained in the " THIRD " paragraph of the decedent's will, namely: " THIRD. I give and bequeath a United States Savings Bond, Series G. of the denomination of $1,000.00 to each of my grandchildren, namely: RICHARD C. HARDENBERGH, BARBARA JEAN HARDENBERGH, DANIEL K. HARDENBERGH, WILLIAM ROSS OSTERHOUDT, and CHARLES H. OSTERHOUDT ".

The facts appear to be as follows: On October 1, 1951, Edith V. M. Hardenbergh, the decedent, was adjudicated an incompetent and her daughter, Margaret E. Osterhoudt, was appointed committee of her person and estate. At that time the testatrix owned five $1,000 United States savings bonds, Series G, having a redempiton value of $4,750. Subsequently, Margaret E. Osterhoudt became liable as such committee for hospitalization, nurses, medical attention and other expenses incidental for the care of the incompetent. Without knowledge of the provisions of the decedent's will, the committee sold the five United States Government bonds and used the major portion of the proceeds to meet such expenses. The committee's account was judicially settled in the County Court of Ulster County on January 7, 1952, and an order was made directing the committee to pay to herself as executrix of the decedent's will the balance of the cash remaining in her hands, amounting to $2,090.04.

When decedent's will was offered for probate it was discovered that by the THIRD paragraph thereof she had bequeathed to each of her five grandchildren a United States savings bond, Series G, of the denomination of $1,000, which bonds had been sold by the committee. The will had been executed on December 17, 1945, nearly six years prior to the appointment of the committee and at the time when the decedent was the owner of the bonds in question.

If the legacies bequeathed to the five grandchildren are specific legacies, it is of no consequence that the sale, so far as the testatrix is concerned, was involuntary. The bonds having been disposed of, an ademption takes place, regardless of the intention of the testatrix. (*Matter of Brann*, 219 N. Y. 263.) '' It was once thought that ademption was dependent on intention, and ' it was, therefore, held in old days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years that has ceased to be law.' (*Slater* v. *Slater, supra* [L. R. (1 Ch. 1907) 665] at p. 671). It has ceased to be law in England (Jarman, p. 163; *Slater* v. *Slater, supra*). It has ceased to be law in New York (*Ametrano* v. *Downs*, 170 N. Y. 388). What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change.'' (*Matter of Brann, supra,* p. 268.)

It seems well settled that if the legacies in question were to be held to be specific, the result of the set of circumstances here

presented would not be open to debate. A situation parallel in its facts to the present case is that in *Matter of Ireland* (257 N. Y. 155). In that case the Court of Appeals dealt with a situation similar to the one in question. There as here the committee had sold the securities which were the subject of the legacy, to meet the expenses of the support and maintenance of the incompetent. The will had been executed more than two years prior to the appointment of the committee and the incompetency of the testator and at a time when the testator was in possession of the shares, which were the subject of the legacy.

Without any discussion the court held the legacy of fifty-six shares of preferred stock of the Ireland Machine & Foundry Co., Inc., to be a specific legacy. Apparently the respondent did not contend that it was not; the main point relied upon being the asserted inability of the committee to change the testator's intent, as manifested by his will and that consequently the legacy was not adeemed by the committee's sale of the subject matter thereof. The opinion of Judge CRANE was as follows (p. 158): " The bequest of all the preferred stock to Lena M. Whitmore was a specific legacy, and as the stock was not in existence at the time the will took effect, or at the death of the testator, there was an ademption, extinction or withdrawal of the gift. A change in the nature of the property works an ademption."

It will thus seem that this court need not seek the intention of the testatrix, so far as the legal doctrine of ademption as applied to specific legacies is concerned.

Therefore, in the opinion of this court the question presented is one as to whether the legacy in question is a specific or general legacy. A legacy is a gift of personal property. Depending upon their nature they are classified as general, specific and demonstrative. " A general legacy is a gift of personal property by a last will and testament, not amounting to a bequest of a particular thing or money, or of a particular fund designated from all others of the same kind. A specific legacy is a bequest of a specified part of a testator's personal estate distinguished from all others of the same kind. A demonstrative legacy is a bequest of a certain sum of money, stock or the like, payable out of a particular fund or security. For example, the bequest to an individual of the sum of $1,500 is a general legacy. A bequest to an individual of proceeds of a bond and mortgage, particularly describing it, is a specific legacy. A bequest of the sum of $1,500 payable out of the proceeds of a specified bond and mortgage, is a demonstrative legacy. A demonstra-

tive legacy partakes of the nature of a general legacy by bequeathing a specified amount and also of the nature of a specific legacy by pointing out the fund from which the payment is to be made; but differs from a specific legacy in the particular, that if the fund pointed out for the payment of the legacy fails, resort may be had to the general assets of the estate.'' (*Crawford* v. *McCarthy,* 159 N. Y. 514, 518–519.)

While ordinarily it would seem that the application of the test mentioned above would make it not too difficult to distinguish among the three classes of legacies, however, intention plays its part and may bring complications into the determination. The testator's intention, as gleaned from his entire will, is the deciding factor as to whether a legacy is general or specific. (*Matter of Security Trust Co.,* 221 N. Y. 213.)

In arriving at the testator's intention, inquiry may be had into the surrounding circumstances as well as an examination made of the language of the will. (*Matter of Strasenburgh,* 136 Misc. 91.) It is the rule that a specific legacy being of a conditional nature is not favored and in cases of doubt the courts will regard the legacy as a general one. (*Matter of Strasenburgh, supra.*) This rule, however, yields to a testator's intention as gathered from his will and from other circumstances (*Matter of Hebbard,* 142 Misc. 41).

It seems that the intention of the testatrix in this case is very plain by the using of the term ''a'' in reference to the bonds to the effect that she did not intend the gift to mean a specific bond. In the light of the cases relative to the intention of a person making a will as gathered from the entire will it would seem in this particular case that the intention of the testatrix herein may well be construed that the gift or legacy of the bonds in question was intended to be a general legacy.

There appear to be many cases, commencing with *Tifft* v. *Porter* (8 N. Y. 516) which holds substantially to the effect that a bequest of a public security, available for purchase in the open market is a general legacy, where the testator does not specify any particular share of stock or bond by serial number or otherwise, and this even though the testator may have been in possession, on the date of the execution of his will, of an equal or larger amount of shares than the legacy. Such a legacy being general in nature, is consequently not adeemed by sale or other disposition of the security in the lifetime of the testator.

In *Tifft* v. *Porter* (*supra*) the testator at the time of his death owned 360 shares of the stock of the Cayuga County Bank.

He left a will containing among other the following bequests: "Second: I give, devise and bequeath unto my wife Ursella Tifft, 240 shares of bank stock in the Cayuga Bank, at Auburn \* \* \*. Third: I give, devise and bequeath, to Harriet S. Glover, 120 shares of stock in the Cayuga Bank ".

These legacies were held to be general.

In *Brundage* v. *Brundage* (60 N. Y. 544) the will bequeathed twenty shares in New York Central Railroad stock of $100 each to his wife, Eliza Brundage, for life. The court held the gift to be a general legacy.

In *Matter of Werle* (91 Misc. 398) construction was sought of the following bequest: " First: After all my lawful debts are paid, I give and bequeath to Mrs. Marion K. Hawes, of Lyndhurst, in the State of New Jersey, fifteen shares of American Car and Foundry Preferred Stock, and twelve shares of United States Steel, common."

The shares were in the testator's possession both at the time of the execution of the will and at the time of his death. At page 402 of the opinion, Surrogate SCHULZ said: " The question is not a new one and I believe is no longer debatable ". On the authority of *Tifft* v. *Porter* (*supra*) the court held the legacies to be general rather than specific.

In *Matter of Malone* (143 Misc. 657) which was also a proceeding for the construction of the decedent's will, testatrix had made a bequest of six shares of American Telephone and Telegraph stock to a hospital, a church and various individuals. The testatrix had disposed of the shares of stock in her lifetime. On the authority of *Tifft* v. *Porter* (*supra*) the court construed the legacies to be general. Surrogate GRIFFITHS in *Matter of Schuetz* (107 N. Y. S. 2d 153, 155) stated " In the absence of any indication of a contrary intent contained in a will, a gift of stock dealt in by the general public on public exchanges, is a general legacy."

It would seem that the bonds in this case are securities in public funds and, therefore, the gift of the same should be considered as a general legacy. There are many other cases which hold substantially the same as the cases herein cited and to refer to those cases would serve no purpose except to be a repetition of what has heretofore been stated.

In the present case there is nothing in the will to indicate any intent on the part of the testatrix to bequeath to her grandchildren only the identical bonds which she owned at the time she made her will. She did not use the term *my* bonds but

instead bequeathed *a* United States savings bond. It would be clearly indicated that any United States savings bond of the series and denomination mentioned will satisfy the bequest. It seems impossible to substantiate the position that it was the intention of the testatrix to make a bequest of any particular bond but on the contrary the bequest being of a government security, dealt in by the public and available to the testatrix on the open market, as opposed to shares in a closely held corporation, the legacy is construed to be as general.

It was the intention of the testatrix to confer some benefit upon her five grandchildren and that by so doing she did, not intend to make their legacy depend upon her continued ownership of the very bonds she possessed at the date of making the will. The legacy for the grandchildren can be saved only by this court construing the legacies to be general and that the legacy was not adeemed by the committee's sale of the bonds. By such construction it would seem to be in accord with the intention of the testatrix and is supported by the language of the will.

The securities certainly can well be construed to be that of public stock, dealt in by the general public and readily available in the market and the legacy can be made good by the purchase and transfer to the grandchildren of government bonds to the number given, to be had in the market.

Not only may the legacy be made good by the purchase of other government bonds, but where there is sufficient assets in the estate, it is the duty of the executrix to do so. Such a ruling was made in the *Matter of Lendle* (250 N. Y. 502) where the question was as to the meaning of certain general legacies contained in the will of the testator payable in marks. He had given legacies to his near relatives in Germany in marks. In *Matter of Liell* (139 Misc. 513) the bequest was of eight $1,000 bonds of Schieffelin & Company to the widow of the testator's deceased brother; also several other bequests of bonds of Schieffelin & Company of $1,000 denominations to various legatees in substantially identical language. The court said at page 515: "The testator divided the Schieffelin & Company bonds unequally among seven legatees, but there is no attempt by the testator to point out any particular Schieffelin bond for any legatee. A specific legacy is a gift of a particular thing. If the testator had disposed of one of these bonds in his lifetime, it would be impossible to determine which of the seven legatees had lost his legacy or part of his legacy for the language of

the testator does not describe the property with sufficient particularity to segregate the bond or bonds to which each legatee would be entitled. If that event had occurred, it would be the duty of the executrix to purchase another bond so that the legacies could be satisfied in kind. (*Matter of Lendle,* 250 N. Y. 502, 505.) ''

It is the opinion of this court that this testatrix intended to confer a benefit upon her five grandchildren. This intention is evidenced by the language used by the testatrix wherein she did not particularize or identify the bonds in any way, but merely bequeathed *a* bond. The legacies in question are construed to be general. By this construction this court believes that the general legacies will save for the grandchildren the benefits which the testatrix intended they should have and, therefore, it is the duty of the executrix to purchase with the general assets of the estate other bonds so that the legacies may be satisfied in kind.

A decree may be entered accordingly.