In re Estate of Kirkwood.

(No. 600486—Decided March 2, 1965.)

*Mr. C. W. Lindsay, Messrs. Morley, Stickle, Keeley & Murphy, Mr. Reuel A. Lang, Mr. Milton C. Portmann.*

Decatur, Referee. This matter is before the Probate Court of Cuyahoga County upon motions to modify an order of distribution in kind filed by Therese G. Moorehouse, as executrix

of the estate of Carol M. Kirkwood, deceased, and individually as a beneficiary or distributee thereof, and Alice Blyth and Ruth G. Hohlfelder, as beneficiaries or distributees thereof.

At the time of the execution of her will, on April 29, 1958, the decedent owned exactly thirty-four (34) shares of American Telephone and Telegraph Company stock. On April 15, 1959, the stockholders of said corporation approved a proposal of its directors to change its 100,000,000 authorized shares of a par value of $100.00 each to 300,000,000 shares of a par value of 33-1/3 dollars each and change each outstanding share of the par value of $100.00 into three (3) shares of the par value of 33-1/3 dollars each. Thus, on April 24, 1959, the corporation, pursuant to said authorization, distributed to Carol M. Kirkwood 68 shares of the new stock so that her thirty-four (34) shares of the par value of $100.00 each thereupon were augmented to the total of 102 shares of the par value of 33-1/3 dollars each. At her death, on September 16, 1960, Carol M. Kirkwood left 102 shares of stock of the American Telephone and Telegraph Company.

On June 8, 1961, the Probate Court of Cuyahoga County heard and granted an application for distribution in kind in the estate of Carol M. Kirkwood No. 600486. By this application Therese G. Moorehouse received 90 shares of stock of the American Telephone and Telegraph Company, Ruth G. Hohlfelder received 16 shares of stock in said corporation, and Alice Blyth received 2 shares in said corporation. On October 13, 1961, Alice Blyth filed a motion to modify order of distribution in kind. Ruth Hohlfelder filed a motion to modify the order of distribution in kind on December 13, 1961. The position taken by Alice Blyth and Ruth G. Hohlfelder in their motions and accompanying briefs is that each is entitled to a proportionate part of the stock produced by the stock split before Carol M. Kirkwood's death. It appears that Therese G. Moorehouse acquired 6 shares of said stock with rights exercised after the testatrix's death. These 6 shares are not in issue here. The distribution advocated by Blyth and Hohlfelder is 48 shares for Moorehouse, 48 shares for Hohlfelder, and 6 shares for Blyth.

It is urged by counsel that the stock split by the American Telephone and Telegraph Company did not change the testa-

trix' interest in the corporation but merely meant that her interest was represented by more shares. This contention is clearly correct. However, it does not follow that the legatees of stock in the corporation are entitled to the additional shares of stock created by the stock split unless it can be shown that one intended to give the specific stock one owned at the time of the execution of the will. Only if this is shown can it be said that then the testatrix bequeathed her proportional interest in the corporation.

The general rule is that specific legacies of stock carry with them additional shares created by a stock split. *Fisher* v. *Paine*, 210 O. R. C. 429, 311 P. 2d 438 (1957)—It has also been held that a general legacy of stock will not carry with it any additional shares of stock created by a stock split. *In re Griffing's Will*, 187 N. Y. S. 2d 907 (1959). It is true that in *Allen* v. *National Bank of Austin*, 19 Ill. App. 2d 149, 153 N. E. 2d 260 (1958), the court claimed to disregard the distinction between general and specific legacies while determining if a legatee was entitled to additional shares of stock created by a stock split. However, the court later said that the testatrix clearly intended to dispose of the shares she owned at the time she executed her will. This later statement would be used by other courts to show that the testatrix was bequeathing a specific legacy. As a result the *Allen case* does not stand for the proposition that a general legatee is entitled to shares of stock created by a stock split after the execution of the will.

Since specific legacies of stock carry with them additional shares of stock created by a stock split while general legacies do not, the motions to modify the order of distribution in kind in the present case depend on whether or not Ruth G. Hohlfelder and Alice Blyth received specific legacies under the will of Carol M. Kirkwood.

It has been said that a specific legacy is one which separates and distinguishes the property bequeathed from the other property of the testator, so that it can be identified. It can only be satisfied by the thing bequeathed; if that has no existence, when the bequest would otherwise become operative, the legacy has no effect. *Tomlinson* v. *Bury*, 145 Mass. 346, 14 N. E. 137 (1887). The identification of specific property bequeathed in a specific legacy may be made by such words as

"my," "in my possesson," "owned by me," "standing in my name," and "which I now hold." 41 Ohio Jurisprudence 872 (1935). In the present case it is quite clear that such words are not used in the legacies of stock to Alice Blyth and Ruth G. Hohlfelder. The word "my" is used in reference to a diamond ring given to Therese G. Moorehouse but it is not used in reference to the shares of stock given to Moorehouse, Blyth and Hohlfelder.

The use of possessive words in the legacy itself, however, is not the only basis on which legacies have been held to be specific. Several courts have held legacies to be specific without the use of "my" or similar expressions, where the will, upon its face, fairly discloses the intention of the testator to make a specific bequest. It has been said that a very slight indication of an intention by the testator to give shares in his ownership at the time of the will is enough to make a legacy specific. *Thayer* v. *Paulding*, 200 Mass. 98, 85 N. E. 868 (1908); *Gardner* v. *Viall*, 36 R. I. 436, 90 A. 760 (1940). This intention may be ascertained from other provisions of the will. *Smith* v. *Smith*, 192 N. C. 687, 135 S. E. 855 (1926); *In re Martin*, 25 R. I. 1, 54 A. 589 (1903). However, in the present problem nothing stated in the other provisions of the will indicate that it was the testatrix's intention to make a specific legacy.

A basis for the contention that Ruth G. Hohlfelder and Alice Blyth received specific legacies is that the bequests totalled exactly the number of shares of stock which Carol M. Kirkwood owned at the time of the execution of her will. A principal issue to be decided, therefore, is whether a specific legacy results when one bequeaths exactly the number of shares of stock owned at the time of the execution of the will without distinguishing the stock bequeathed from any other stock in the corporation. In the writer's opinion this a question of first impression in Ohio as there does not appear to be prior Ohio authority on this precise point. This problem, however, has been encountered in other jurisdictions, and there is considerable case law on it. Many of these cases are discussed in an excellent article by John G. Paulus, Professor of Law at Willomette Unversity. Professor Paulus' article, *Special and General Legacies of Securities—Whither Testator's Intent,* is found in 43 Iowa L. Rev. 467 (1958).

There appears to be a split of authority as to whether or not the courts should be influenced by the fact that the testator owns at execution the same number of shares of stock that he gives in his will. The case *Tifft* v. *Porter*, 8 N. Y. 516 (1853) is the leading case in support of the view that a legacy is not made specific simply because one owns exactly the number of shares of stock bequeathed at the time of the execution of the will. While *In re Largue's Estate*, 267 Mo. 104, 183 S. W. 609 (1916), is a leading case for the position that such facts will make the legacy specific.

While there are other cases which show the different attitudes taken by the courts on the present problem, the factual situations present in the *Tifft* and *Largue cases* are so similar to the present one that a discussion of them may be helpful. In *Tifft* v. *Porter*, the testator owned 300 shares of Cuyahoga County Bank stock at the time he executed his will. By his will the testator bequeathed 240 shares of Cuyahoga County Bank stock to one legatee and 120 shares of Cuyahoga County Bank stock to another legatee. However, the testator did not indicate that the shares bequeathed were to be taken from those which he owned. His will read in part "I give, devise and bequeath . . . 240 shares of bank stock in the Cuyahoga County Bank . . ." and "I give, devise and bequeath . . . one hundred and twenty shares of stock in the Cuyahoga County Bank . . ." The Court held that the legacies were general and not specific because by their terms the legacies did not indicate a particular part of the testator's estate as the subject of the bequests.

In contrast to the *Tifft* decision, the case *In re Largue's Estate* held that when one owned exactly the number of shares of stock bequeathed at the time of the execution of the will the legacies were specific. In *Largue's Estate* the testatrix owned 510 shares of the National Bank of Commerce in St. Louis at the time she executed her will. This stock was bequeathed in varying amounts totaling 510 shares to five named persons but the bequests did not refer to the shares of stock as belonging to the testatrix. For example, one bequest said "I give and bequeath 46 shares of stock of the National Bank of Commerce in St. Louis to . . ." The *Largue Estate* decision is especially important because it clearly recognizes that the *Tifft* case and others have reached opposing conclusions on the

same facts and it clearly rejects these opposing decisions.

In the writer's opinion it serves no beneficial purpose to enumerate at length the various decisions which follow the two positions stated above. This is well done on p. 497 of the article by Professor Paulus in 43 Iowa L. Rev. It is significant to note that some states have consistently followed one view while in other states there is often a split of authority within a state itself. It seems clear that Missouri follows the specific legacy view when the bequest equalled present ownership. *In re Largue's Estate*, 267 Mo. 104, 183 S. W. 608 (1916), and *In re Calnane's Estate*, 28 S. W. 2d 420 (Mo. 1930). This position is also taken by New Hampshire. *Jewell* v. *Appolomic*, 75 N. H. 317, 74 Atl. 250 (1909), and *Drake* v. *True*, 72 N. H. 322, 56 A. 749 (1903). Connecticut follows this position. *Griffith* v. *Adams,* 106 Conn. 19, 137 Atl. 20 (1927), and *Fidelity Title and Trust Co.* v. *Young,* 101 Conn. 359, 125 Atl. 871 (1924). Massachusetts also follows this view *White* v. *Winchester,* 23 Mass. (6 Pick.) 48 (1827).

It would be a great oversimplification, however, to state that all the cases which follow *Largue's Estate* were decided solely on the basis that the amount of stock bequeathed was equal to the amount owned at the time of the will's execution. The decision that the legacies were specific was often made after the court read the clauses bequeathing stated numbers of shares of stock in connection with the other portions of the will and/or codicil. See *Griffith* v. *Adams.* As a result of what appears at first glance to be a decision holding that the legacy is specific because the shares of stock bequeathed equalled in number the shares at the time of the will may actually be a decision which rests on the ground that the will as a whole indicates that the legacies should be specific. *Gardner* v. *Viall,* 36 R. I. 436, 90 A. 760 (1914).

Those states which have conflicting decisions on the relation of exact bequests to the type of legacy created include Pennsylvania, New Jersey, and New York. The cases for these states are cited on p. 497 and p. 498 of Professor Paulus' article in 43 Iowa L. Rev.

In California and Maine legacies have been held to be general when the quantity of securities held at execution coincides exactly with the amount given. *In re Blackmun's Estate*, 98

Cal. App. 2d 314, 220 P. 2d 30 (1950), and *Palmer* v. *Palmer's Estate*, 106 Me. 2s, 75 Atl. (1909).

The general Ohio law on the subject of general and specific legacies is expressed in the case of *Hood* v. *Garrett*, 53 Ohio App. 464, 5 N. E. 2d 937 (1936). In the *Hood* decision it is stated that a mere bequest of stock is general, and a bequest of a stated number of shares of stock of a particular corporation, without any reference to the particular shares intended is a general bequest.

The cases *Clegg* v. *Lippold*, 68 Ohio Law Abs. 590, 123 N. E. 2d 549 (1951) and *Wylde* v. *Wylde*, 55 Ohio Law Reporter 118 (1955) have been cited by counsel as expressing the present Ohio law applicable to the present problem. In the *Clegg case* the court held a legacy of stock to be specific because of the language used by the will in describing the stock. The testatrix had referred to the stock in the will as ''my common stock.'' Under the general rule prevailing in the United States such language creates a specific legacy. However, it should be noted that in headnote one of the *Clegg case* the court stated that while ordinarily a bequest of a designated number of shares in a corporation constitutes a general legacy a testatrix by apt language may refer to shares of stock as forming a part of her estate and thus render the bequest specific. From this statement it appears that if apt language is not used the bequest of designated shares in a corporation is considered a general bequest.

The case *Wylde* v. *Wylde* is an unreported case which was pending before the Ohio Supreme Court in 1955. The Supreme Court overruled the motion to certify 55 Ohio Law Reporter 163. In the case the testator in his will stated that ''in the event he owned the stock bequeathed or 174 shares thereof at the time of his death, he bequeathed 25 shares to his daughter and 149 shares to his wife.'' After the will was executed the testator exchanged 174 shares of stock for 696 shares on a reduction in par value. Under the general rule the language used by the testator made the legacies specific and therefore the additional shares went to the specific legatees. As a result, *Wylde* v. *Wylde* is not helpful in resolving the present problem.

Counsel has cited 41 Ohio Jurisprudence 872 (1935), as

stating the general rule on this subject in the state of Ohio. This section states:

"The general rule is that a bequest generally of certain stocks or bonds, without further explanation and without more particularly referring and marking the corpus of the identical bonds or stocks, does not amount to a specific legacy, even though at the time of the execution of the will the testator may, in fact, have been possessed of lands and stocks of that description to an equal amount or more."

However, the authority for this statement is two Ohio cases, *Nash* v. *Hamilton*, 8 Ohio App. 66 (1918), and *Rote* v. *Warner*, 17 O. C. C. 342 (1899), and an article in 28 Ruling Case Law 293 (1921). The article is the only one of the three which discusses the problem of the clarification of the legacy when the testator is possessed of stock at the time the will is executed in an amount exactly equal to the stock bequeathed, and the decision in the article is not based on any Ohio case. Therefore, it would appear that Ohio has never specifically decided this point.

In determining the Ohio position on the present issue several factors are to be considered. The case *Allen* v. *National Bank of Austin*, 19 Ill. App 2d 149, 153 N. E. 2d 260 (1958), comes close to presenting the identical problem present in the Estate of Carol M. Kirkwood. In the *Allen case* the testatrix bequeathed stock in language which would normally be considered to create a general legacy. For example, "I give and bequeath . . . To Myra Johnson, cousin, 440 shares of Commonwealth Edison Company common stock." There was no other language used in the will which would indicate that a specific legacy was intended. However, the court held that the legatees received stock created by a stock split. The basis of this decision was that it appeared that the testatrix had at the time of her death the identical shares of stock she had at the time she made her will (except for the additions growing out of stock splits) and the court from this fact felt the testatrix intended to give her stock to the legatees named. In essence the Illinois court took the position that the legacies were specific, although the court states that the classification of legacies was not pertinent, because the stock owned at the time of the execution of the will was exactly equal to the amount of stock bequeathed by the will, and since the legacies

were specific the legatees are entitled to the additional shares created by the stock split.

In determining the weight to be given the *Allen case* it is important to consider that Professor Paulus in his article *Special and General Legacies of Securities—Whither Testator's Intent* makes the conclusion that "the relation between the quantity of securities owned at execution and the amount given in the will has little probative value." 43 Iowa L. Rev. 467, 515 (1958). It is also clear that the present Ohio position is that a mere bequest of stock is general, and a bequest of a stated number of shares of stock in a particular corporation, without any reference to the particular shares intended is a general bequest. Under the prevailing view shares of stock created by stock splits do not pass to a general legatee of stock.

The legacies created by the will of Carol M. Kirkwood are general legacies. There is no language in the bequests or in the will which indicates that any specific stock was bequeathed. The mere fact that the stock owned by the testatrix exactly equalled what was given by the will is not sufficient, in the writer's opinion, to change what is clearly a general legacy into a specific legacy. To hold that this fact alone created a specific legacy would be to eliminate the requirement that a specific legacy separate and distinguish the property bequeathed. Therefore, the general legatees are not entitled to the stock resulting from a stock split after the execution of the will and before the death of the testatrix.