In the Matter of the Estate of HANNAH M. LYDIG, Deceased.

Surrogate's Court, New York County, June 22, 1932.

*Stewart & Shearer* [*George L. Shearer* and *James H. Richards* of counsel], for the executor.

*Evarts, Choate, Sherman & Leon* for Edward P. Beckwith and Mary P. Beckwith, as executors, etc., of Margaretta P. Beckwith, deceased.

*Barry, Wainwright, Thacher & Symmers* [*Herbert Barry* of counsel], for the American Society for the Prevention of Cruelty of Animals.

*Gerald Donovan*, for the New York Society for the Prevention of Cruelty to Children.

*Milbank, Tweed, Hope & Webb* [*Edward W. Walker* of counsel], for the Association for Improving the Condition of the Poor.

*George N. Whittlesey*, for the Children's Aid Society.

*George H. Fox*, for St. Mary's Hospital for Children, Inc., and Bide-a-Wee Home Association, Inc.

*Curtis, Fosdick & Belknap* [*Norborne P. Gatling* of counsel], for the Young Women's Christian Association of New York City.

*Butler, Wyckoff & Reid* [*J. Edwards Wyckoff* of counsel], for Stuyvesant Square Hospital, formerly the New York Skin and Cancer Hospital.

*Olvany, Eisner & Donnelly* [*Mart Eisner* and *Samuel Michelman* of counsel], for the Honor Emergency Fund of the Fire Department of New York City.

*Zabriskie, Sage, Gray & Todd* [*William E. Birdsall* of counsel], for the Prison Association of New York.

*Jackson, Fuller, Nash & Brophy* [*Raymond M. Tierney* of counsel], for St. Luke's Home for Aged Women.

*Walter W. Law*, for Little Missionary Day Nursery.

*Winthrop, Stimson, Putnam & Roberts* [*John E. Parsons* of counsel], for the Lenox Library Association.

*Harrison, Elliott & Byrd* [*Robert W. B. Elliott* and *Hugh N. W. Ronalds* of counsel], for the Society of St. Johnland, N. Y., Protestant Episcopal City Mission Society and Bethlehem Day Nursery of the Church of the Incarnation.

*Joseph Potts*, for Tompkins McIlvaine and others.

*Abram Glaser*, special guardian for Julia Dorothea McIlvaine and another, infants.

*Sage & Schoonmaker*, for the Young Men's Christian Association of New York City.

*Parsons, Closson & McIlvaine* [*Henry B. Closson* of counsel], for Elizabeth E. Richardson and others.

*King, Barr & Robbins*, for the respondent St. Luke's Hospital.

FOLEY, S. A dispute has arisen in this accounting proceeding between certain individual and corporate legatees named in the sixth paragraph as to whether the language of the eighth paragraph of the will of the testatrix includes or excludes the corporations from participating in the residuum. By the eighth paragraph the testatrix directed her executors to convert the residue or remainder of her individual estate, including any lapsed legacies or devises, into money, and after deducting therefrom certain charges against it, " to pay over the net proceeds of the same *pro rata*, in the same relative proportions, to those who may survive me and be entitled to receive legacies or bequests under the ' sixth ' clause of this my Will, to whom I give and bequeath the same." By the sixth paragraph she made gifts of specific amounts of money to nineteen individuals and twenty-one charitable corporations and institutions. The determination of this question depends primarily upon the meaning placed upon the words " those who may survive me."

I hold that the testatrix intended to include both the individual and the corporate legatees as beneficiaries of the residuary estate. As commonly used, in its strict sense, the word " survive " applies to persons. In legal phraseology, however, it has been frequently employed in reference to the continued existence of corporations or institutions. Corporations may survive as well as individuals. The continued existence of a corporate legatee is a condition precedent to the vesting of the legacy in the corporation. (*Wright* v. *Wright*, 225 N. Y. 329.) A gift to a corporation that has ceased to function prior to the death of a testator lapses. It had to " survive " the testator in order to be entitled to payment.

Many cases have been cited on behalf of the charities in support of their contention that they are included as legatees within the language of the eighth paragraph of the will. Perhaps the strongest case is the Massachusetts case of *Smith* v. *American Missionary Association* (240 Mass. at p. 26). It applies with particular force to the situation involved here. There, as here, the testatrix bequeathed a number of general legacies to individuals and to certain charitable corporations. The residue of her estate she gave to " all of the above named legatees living at the time of my decease." In holding that the corporate legatees as well as the individuals were entitled to share in the residue, the court said: " The word ' living ' in common speech is not confined to individuals. It is applicable to things as well. We even speak of our language as a living language. It is frequently employed in connection with societies, institutions and corporations and is used in the sense of existing, surviving or continuing in operation. It cannot be successfully contended that the use of the word ' living ' in any way limits the gift of the residue to the individual legatees, to the exclusion of the corporations mentioned."

If we speak of a corporation as " living," we may speak of it as " surviving." It is significant as indicating her meaning of the word " survive " that in the ninth paragraph of the will, in appointing an individual and a trust company as executors, the testatrix used the words " I authorize and empower my said executors, or such of them as may qualify and act *and the survivor of them* " (italics mine). That the word " survivor " was intended to apply to both the individual executor and the corporate executor is clear. The same interpretation, therefore, must be given to the word " survive " as used in the eighth paragraph of the will.

Nor do the concluding words of the eighth paragraph, " to whom I give and bequeath the same," exclude the charitable organizations. The words " who " and " whom " primarily and grammatically relate to persons. But they have been time and

again held to include artificial persons, such as corporations. (40 Cyc. 928.)

The intention of the testatrix not to limit the distribution of the residuary solely to the individual legatees is further emphasized by the amounts bequeathed and the general scheme of the will. Her nearest surviving relatives were three nephews and a niece, to whom she gave the aggregate amount of $95,000. Among the other individual legatees were included a cousin, four grandnieces, a grandnephew, and seven persons entirely unrelated to the testatrix. These latter individuals received the total sum of $51,000. In addition, there was a bequest to a Dr. Heddon of $5,000 and a gift to her butler of $10,000. The gift to the butler was on condition that he be in her employ at the time of her death. The largest bequest was to her nephew, Tompkins McIlvaine, who received $30,000. This gift was bequeathed to him only if his aunt, a sister of the testatrix, predeceased her. If his aunt survived the testatrix, he received nothing. The total bequests to the individual legatees amounted to the sum of $161,500. On the other hand, the gifts to the charities, which included eleemosynary, educational, religious and charitable corporations and institutions, equalled the sum of $260,500 in legacies varying in amounts from $2,500 to $50,000 each.

In subsequent paragraphs of her will, in appointing the estate of her husband, she made further generous and substantial bequests to charitable institutions. It is inconceivable that she would exclude the charities from participating in a fund of almost $1,000,000, the amount of the residuum, when the scheme of her will so clearly indicates that the charities were by far the greater objects of her bounty.

Submit decree on notice construing the will and settling the account accordingly.