In the Matter of the Accounting of ELLEN E. LANGDON et al., as Trustees under the Will of ELIZABETH C. LANGDON, Deceased, Petitioners.

Surrogate's Court, Westchester County, July 1, 1943.

*Rene A. Wormser* and *Michael J. Kiely* for petitioners.

*Herbert Barry* and *Howard B. Nichols* for the American Society for the Prevention of Cruelty to Animals.

*John J. Dillon,* special guardian.

MILLARD, S. On this trustees' accounting proceeding petitioners request: (1) a construction of the will and (2) a determination as to whether there has been a valid exercise of the power of appointment granted to Anna H. Delavan, deceased, by paragraph " *Seventh* " thereof. The requested construction requires a determination as to the persons in whom one half of a remainder interest vested upon the death of Anna H. Delavan and who are designated as the " residuary legatees." The provisions of the will, as modified by a codicil thereto, insofar as pertinent, are as follows:

"*Seventh:* I direct my executors and trustees hereinafter named to set aside from my estate sufficient funds to provide a net income of Three Thousand Dollars ($3,000) a year and to hold the same in trust, to collect, take and receive the income from said fund and after deducting the reasonable costs and expenses of the trust to pay over to my friend, Anna H. Delavan of Long Lane Court Apartment, Upper Darby, Pennsylvania, Two Hundred Fifty Dollars ($250) per month during her life and upon her death, or in the event of her death before mine, to transfer, assign and pay over one-half of the principal of said trust as she by her last Will and Testament may provide, or in the event that she does not make a Will, to her son, Frederick M. Delavan of Upper Darby, Pennsylvania, or in the event of his death before mine, to his daughter Ursula, and to transfer, assign and pay over the other half of the principal of said trust equally to my residuary legatees, hereinafter designated, surviving at the time of death of Anna H. Delavan. Any excess of net income received from said fund, I direct my executors and trustees also to pay over equally to my said residuary legatees surviving at the time of said payment or payments.

"*Eighth:* I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of every nature and description and wherever situated of which I shall die seized or possessed, or to which I shall be entitled at the time of my decease or which is subject to my disposal by will unto my trustees hereinafter named, or such of them as shall qualify, or the survivor or successors of them, in trust as follows:

"To collect and receive the income, rents and profits of such residuary estate and, after deducting the reasonable costs and expenses of the trust, to pay over the whole net balance of such income, rents and profits to my sister, Ellen E. Langdon, during the term of her life."

There follows in subdivision (a) of paragraph "*Ninth*" a direction that upon the death of the decedent's said sister, Ellen E. Langdon, $200,000 of the residuary trust be continued in trust and the income be paid to a nephew, Andrew Langdon during his life, with remainder over to his children him surviving, and to the issue of any child predeceasing him. In the event that her residuary estate proved to be insufficient to pay certain other bequests contained in paragraph "*Ninth*", the testatrix directed that the aforementioned trust fund of $200,000 be reduced sufficiently to pay such bequests, provisions for which are made in subdivisions (b) to (h) of the same paragraph as follows: $50,000 to a brother William Chauncey Langdon; $30,000

to Addison W. Warner; $25,000 to her chauffeur William Carlson, increased by the codicil to $30,000; to all other servants, except the chauffeur, continuously in her employ for at least one year prior to her death, a sum equal to $10 per week for the total number of weeks of such employment; $5,000 to her cousin Harriette Young Warner; $20,000 to her cousin Elizabeth L. Warner and $15,000 to her cousin Mary W. Warner. Subdivision (i) thereof reads as follows: " (i) I give, devise and bequeath the remaining balance of such rest, residue and remainder of my estate (including any lapsed legacies) up to Fifty Thousand Dollars ($50,000) to Andrew Langdon, and any balance, if any, to American Birth Control League, Inc., a New York Corporation, and the American Society for Prevention of Cruelty to Animals, share and share alike, absolutely and forever."

It further appears from the petition and other records on file in this court that Anna H. Delavan, the life beneficiary named in the " *Seventh* " paragraph of decedent's will, survived the testatrix and thereafter died on or about September 14, 1942, a resident of the State of Pennsylvania, leaving a last will and testament duly probated in that State. Harriette Young Warner, one of the aforementioned legatees, predeceased Anna H. Delavan, and at the time of death of Anna H. Delavan, Andrew Langdon, the life beneficiary named in subdivision (a) of paragraph " *Ninth* " was alive as were his two children, John Le Droit Langdon and Ellen Elizabeth Langdon.

A residuary legatee is " one who takes what remains or a portion of what remains after satisfying all other gifts, charges, losses and expenses " (*Matter of Goggin*, 43 Misc. 233, 237). An examination of the will shows that the testatrix failed to name any residuary legatees in the strict sense of the words and a narrow construction would result in intestacy as to the remainder interest presently distributable. One of the canons of construction is that the court should endeavor wherever possible to avoid intestacy (*Matter of Hayes*, 263 N. Y. 219, and cases cited). None of the parties has urged that the will be construed in that manner and the court is of the opinion that the language employed, considered in the light of the other dispositive provisions of the will, is susceptible of a meaning that will prevent intestacy. It is quite evident that the chief object of the testatrix's bounty was her sister Ellen E. Langdon, the sole life beneficiary of the primary residuary trust. The trustees urge that the court should hold, therefore, that by the words " residuary legatees " the testatrix intended to desig-

nate the trustees of the said residuary trust. Although the court is allowed great latitude in an endeavor to carry out an apparent testamentary scheme (*Matter of Gallien*, 247 N. Y. 195), nevertheless a construction that does violence to the language of the will is to be rejected (*Matter of Buechner*, 226 N. Y. 440, 443). Here the word " equally " and the phrase " surviving at the time of death of Anna H. Delavan " cannot be ignored; that they are inconsistent with and militate against a construction in favor of the trustees of the residuary trust, one of whom is a bank, is self evident. There are further objections to this construction. *First,* it will prevent a present distribution of the remainder interest of the Delavan trust fund, contrary to the direction in the will that upon the death of Anna H. Delavan the trustees " transfer, assign and pay over the other half of the principal of said trust equally to my residuary legatees * * *." *Second,* the possible inclusion of any portion of the corpus of the Anna H. Delavan trust in the secondary trust established for the benefit of Andrew Langdon in paragraph " *Ninth* " would constitute a violation of the rule against perpetuities. For the foregoing reasons, the court is compelled to reject this suggested construction.

The American Birth Control League, Inc., one of the named remaindermen under the residuary trust, contends that it and the American Society for the Prevention of Cruelty to Animals are the only true residuary legatees and that consequently they share the fund " equally ". The court having eliminated the trustees as " residuary legatees " it follows that the testatrix failed to designate residuary legatees in the strict sense of the words; the only other persons named in paragraph " *Ninth* ", excluding the children of Andrew Langdon, are remaindermen of the Ellen E. Langdon trust. That the respondent charities are given only a possible residue of the remainder is indicative of an intent to favor the individual remaindermen. Can it be said that these remaindermen whose rights are clearly thus subordinate to the primary or individual remaindermen should take under paragraph " *Seventh* " to the exclusion of the latter, whose rights are clearly preferred over the former by paragraph " *Ninth* "? I think not. The charities are merely potential remaindermen, the payment of whose legacies is conditional upon the existence of " any balance, if any " after payment of all legacies of the named primary remaindermen. In my opinion the inclusion as residuary legatees of the so-called primary remaindermen to the exclusion of the secondary or potential remaindermen would achieve a result more in harmony with the

apparent general testamentary scheme. The primary remain-dermen were those persons bound closest to decedent in her lifetime by blood or by ties of friendship or of long and faithful service. Next to her sister those persons were the natural objects of her bounty and, in the absence of any apparent intent to the contrary, should be favored over charitable corporations with which, for all that appears, the decedent had no close association or ties during her lifetime.

This conclusion is not in conflict with the decision of Surrogate Foley in *Matter of Lydig* (145 Misc. 321, affd. 238 App. Div. 830, affd. 263 N. Y. 600). There the pertinent portion of the will directed the executors to convert the residuary into money and, after deducting therefrom certain charges, " to pay over the net proceeds of the same *pro rata,* in the same relative pro-portions, to those who may survive me and be entitled to receive legacies or bequests under the ' sixth ' clause of this my Will, to whom I give and bequeath the same." By the sixth paragraph of the will the testatrix made gifts of stated amounts of money *nominatim* to nineteen individuals and twenty-one charitable corporations and institutions. In holding that the words " those who may survive me " were capable of including the corporate legatees, the court stated at page 323: " As commonly used, in its strict sense, the word ' survive ' applies to persons. In legal phraseology, however, it has been frequently employed in reference to the continued existence of corporations or institu-tions. Corporations may survive as well as individuals."

An analysis of this decision, however, indicates that the dominant factor considered by the court in reaching its con-clusion was that the inclusion of the named charitable corpora-tions and institutions within the class was more in harmony with the general scheme of the will and the apparent desires of the decedent. This attitude is indicated by the following con-cluding sentence of the opinion: " It is inconceivable that she would exclude the charities from participating in a fund of almost $1,000,000, the amount of the residuum, when the scheme of her will so clearly indicates that the charities were by far the greater objects of her bounty."

The court having here determined that the individual remain-dermen and not the charities were intended to be the principal objects of decedent's bounty, that definition of the word " sur-viving " must be adopted which will be in harmony with and carry out the apparent intent of the testatrix.

I therefore determine that the following persons named in paragraph " *Ninth* " of the will constitute the " residuary lega-

tees " surviving at the time of death of Anna H. Delavan, and as such are entitled to share equally in one half of the principal of the trust fund established under the " *Seventh* " paragraph of the will: William Chauncey Langdon, Addison W. Warner, William Carlson, Elizabeth L. Warner, Mary W. Warner, Andrew Langdon, and such employee or employees, excluding William Carlson, who had been continuously in the employ of decedent for at least one year immediately preceding her death.

The remaining question involves a determination as to whether Anna H. Delavan duly executed the power of appointment conferred upon her by the " *Seventh* " paragraph of decedent's will. The holographic will of the said Anna H. Delavan reads as follows:

May 20, 1935

" This is to state that in case of my decease I leave and bequeath everything that I own in the world to my beloved Son Fred Delavan — This is to include all of my personal belongings, household goods, of every description, everything in my apartment or in storage — all money or monies in bank or due me or bequeathed me by Elizabeth Curtis Langdon due at the time of my decease — all property anywhere situated — which I am entitled to by law — or that is in litigation — I also direct that no change shall be made in Elizabeth Curtis Langdon's Will regarding the terms of the legacy she left me — Her desire and directions expressed in Par 7 — of her Will regarding my son Frederick M. Delavan and his daughter Ursula are to be carried out to the letter.

Signed — ANNA HAZELTON DELAVAN
4801 Locust St.
Glademore Court
Philadelphia, Pa — "

By section 18 of the Personal Property Law, it is provided as follows: " Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication." In my opinion the will of Anna H. Delavan clearly indicates her intent not to exercise the power of appointment conferred upon her. I therefore determine that the other one half of the remainder of the trust for the said Anna H. Delavan passes under the provisions of paragraph " *Seventh* " of the will of Elizabeth Curtis Langdon.

Settle decree accordingly.