T.C. Memo. 1996-207

UNITED STATES TAX COURT

ROBERT JOSEPH LOOBY and M. PATRICIA LOOBY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10791-94.                    Filed April 30, 1996.

Robert Joseph Looby and M. Patricia Looby, pro sese.

<u>Thomas S. DiLeonardo</u>, for respondent.


MEMORANDUM OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b) and Rules 180, 181, and 182.[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable years in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income tax for the years 1990, 1991, and 1992 in the amounts of $1,358, $4,209, and $2,072, respectively.  The sole issue for decision is whether petitioners are entitled to deductions under section 212 for legal fees paid during the years 1990, 1991, and 1992.

Most of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.  At the time the petition in this case was filed, petitioners resided in Tucson, Arizona.  References to petitioner are to M. Patricia Looby.

Background

In the statutory notice sent to petitioners in this case, respondent disallowed for the years 1990 through 1992, itemized deductions taken by petitioners for legal fees totaling $29,915.07.[2]

The will

Petitioner's mother, M. Doris Casey (decedent), died leaving a will on February 16, 1982.  The will directed that debts, funeral expenses, and the expenses of settling the estate be paid by the executors as soon as practicable.  The will made specific

---

[2]The parties stipulated petitioners' tax returns for 1990, 1991, and 1992, as well as the amounts of legal fees in each year.  In a separate paragraph the parties stipulated that the fees for the 3 years totaled $30,095.07, an apparent error in addition.

bequests of cash on hand in two savings accounts to petitioner and her sister, respectively, and monetary bequests of $25,000 each to two family members[3] and a friend.  The "rest, residue and remainder" of the estate was to be divided between petitioner (25%), her sister (25%), and a trust (50%) to be created by the executors for the benefit of the children of petitioner and her sister.

In her will, the decedent named her brother-in-law, William F. Hyland (Hyland), and Patrick J. Scinto (Scinto) as co-executors of her estate.  The co-executors were granted broad power to administer and distribute the estate, including the power to sell, lease, invest and reinvest all or part of the decedent's estate, "real, personal and mixed".

The estate

Along with the previously mentioned savings accounts, and miscellaneous personalty, the estate included 4 parcels of real property that were disposed of as follows:  (1) The decedent's personal residence in Bronxville, New York, was sold by the executors on February 23, 1983; (2) a vacant lot in Yonkers, New York, was sold by the executors on May 18, 1983; (3) commercial property in Mobile, Alabama, was sold by the executors in May of 1985; and (4) commercial property in Chicago, Illinois, was sold by the executors on October 31, 1986.

---

[3]Mark Hyland and Sharon Hyland, adult children of co-executor William F. Hyland.

The estate also held 50-percent stock ownership[4] in a close corporation, which owned parcels of real estate. In September of 1986, the executors advised petitioner that the corporate stock would be "transferred". In late December of 1986, there was a disposition of the stock by the executors. As a result of this disposition, certain assets of the corporation were acquired by Nationwide Properties Ltd., a close corporation owned or controlled by children[5] of co-executor, Hyland.

Petitioner's lawsuits

On or about November 1, 1986, the beneficiaries of the estate of M. Doris Casey filed a "PETITION FOR REMOVAL OF EXECUTORS AND TRUSTEES" in the Surrogate's Court of the State of New York, in Westchester County.[6] Following a statement of facts, the State court petition for removal contains seven allegations, six of which assert that the executors engaged in self-dealing and paid excessive fees out of the estate. One of the seven allegations is that the sale of the Chicago property was mismanaged, resulting in a lawsuit against the estate's

---

[4]At her death, decedent owned two of the four outstanding shares of Huber-Kettell Corporation. The two other shares were owned by Mark W. Hyland and Sharon Hyland.

[5]In State Court documents stipulated by the parties, Mark W. Hyland and Sharon A. Hyland are identified as owning or controlling Nationwide Properties, Ltd.

[6]Estate of M. Doris Casey, Surrogate's Court File No. 816-1982.

beneficiaries, and that the executors failed to collect past due rent on the property of approximately $80,000.

On June 15, 1989, petitioner filed "OBJECTIONS TO ACCOUNT" with the Surrogate's Court,[7] praying for disallowance of fees and commissions, and for surcharges and damages totaling over $836,000. Petitioner's objections to the executors' accounting for the estate may be summarized as alleging: (1) Excessive attorney's fees were paid to four law firms; (2) self-dealing by and excessive commissions paid to executor Hyland; (3) excessive commissions paid to executor Scinto; (4) self-dealing on the part of Hyland in disposing of the close corporation stock, jewelry of the estate, and in valuing a partnership interest of the estate; (5) excessive real estate commissions and management fees paid to Hyland's son, Mark V. Hyland; (6) the fraudulent sale of various parcels of realty at less than fair market value; (7) the failure of Hyland and Scinto to establish a trust for the children of petitioner and her sister and the executors' payment of funds directly to the children; and (8) mismanagement of the Chicago property causing the beneficiaries to be sued, and the executors' settlement of the suit by conceding $24,420 in back rent.[8]

---

[7]File No.0816-1982.

[8]The prayer for relief on this issue asks for a return of the "Loss incurred in sale of Chicago property" of $24,420.

On October 13, 1993, the Surrogate's Court issued its decree[9] in the matter of the accounting for the estate, finding some issues in favor of and some against petitioner. The decree further held that petitioner's efforts had benefited the estate and that she should be reimbursed by the estate for legal fees and litigation expenses paid to her attorneys in the amount of $31,141.[10]

The parties agree that petitioners incurred the $4,855 in legal fees claimed on their 1990 return, $17,144 of the $17,468.01 claimed on their 1991 return and $10,577.30 in legal fees for 1992 although they deducted but $7,444 on their return for the year.

## Discussion

We must decide whether the legal fees incurred by petitioners in the years 1990 through 1992 are deductible under section 212, which provides:

> In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year--
>
> (1) for the production or collection of income;
>
> (2) for the management, conservation or maintenance of property held for the production of income; or

---

[9]Affd. sub nom. In the Matter of Mary Doris Casey, 634 N.Y.S.2d 396 (N.Y. App. Div. 1995).

[10]This amount encompasses the $29,915.07 deducted on petitioners' return for the years 1990, 1991, and 1992.

(3) in connection with the determination, collection, or refund of any tax.

Because petitioners argue that their expenditure of legal fees was for the "protection of income"[11] our focus will be on the first two subsections of section 212.

Respondent argues that petitioners' legal expenditures were neither for the production or collection of income nor for the management of property held for the production of income, but were instead to establish a right to or to perfect title to assets passing from a decedent. It is petitioners' burden, of course, to prove that all of the requirements of section 212 have been met before their deductions will be allowed. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

A taxpayer may not, under section 212, deduct legal fees that are personal expenses. Section 262(a). Legal fees incurred in protecting or asserting one's right to property of a decedent as heir or legatee are not deductible. Section 1.212-1(k), Income Tax Regs. Also well established is the principle that amounts paid to defend or perfect title to property are nondeductible capital expenditures. Woodward v. Commissioner, 397 U.S. 572 (1970); Kramer v. Commissioner, 46 B.T.A. 951, 958 (1942). Furthermore, amounts allocable to the production or

---

[11]The return for 1990 indicates that legal fees were paid to "Protect investment". Petitioners, on their returns for 1991 and 1992, deducted legal fees expended "to protect estate assets".

collection of income that is not includable in gross income[12] are not deductible under section 212. Sec. 1.212-1(e), Income Tax Regs.

Origin and character of the claim

The Supreme Court, in United States v. Gilmore, 372 U.S. 39 (1963), held that the characterization of litigation costs as "profit-seeking" or "personal" depends on whether or not the claim arises in connection with the taxpayer's profit-seeking activities. Further, the Court said: the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was 'business' or 'personal' and hence whether it is deductible or not under [the predecessor to section 212] * * * [United States v. Gilmore, supra at 49].

The "origin-of-the-claim" rule is not a mechanical search for "the first in the chain of events which led to the litigation but, rather, requires an examination of all the facts." Boagni v. Commissioner, 59 T.C. 708, 713 (1973). The question to be answered is, out of what kind of transaction did the litigation arise. Id.

When determining the origin of the claim, the Court must consider the issues, the nature and objectives of the action, the defenses asserted, the purpose for the legal fees, the background of the litigation and "all facts pertaining to the entire controversy out of which the disputed expenses arose". Morgan's

[12]See sec. 102 (gross income does not include the value of property received by gift, bequest, devise or inheritance).

Estate v. Commissioner, 332 F.2d 144, 151 (5th Cir. 1964) (cited in Boagni v. Commissioner, supra at 713); Barr v. Commissioner, T.C. Memo. 1989-420. The line demarking deductible from nondeductible expenditures is often shadowy and "It would be idle to suggest that all the authorities in this field can be reconciled." Ruoff v. Commissioner, 30 T.C. 204, 208 (1958), revd. and remanded on other grounds 277 F.2d 222 (3d Cir. 1960).

Under her mother's will, petitioner was to receive both a specific bequest of bank account funds and also a portion of the "rest, residue and remainder" of the estate.

In both the action to remove the executors and the action in objection to the executors' accounting petitioner was acting to protect her interest as a residuary beneficiary of the estate. Therefore, the origin of petitioner's claims was as a residuary legatee, one who takes what remains, or a portion of what remains of the estate after the satisfaction of all other gifts, charges, losses and expenses. See In re Langdon's Will, 50 N.Y.S.2d 100 (Sur. Ct. 1943). A gift of the residue of an estate does not dispose of any specific article of property and is payable out of the estate in general. Application of Osterhoudt, 118 N.Y.S.2d 879, 882 (Sur. Ct. 1953); In re Ruben's Will, 115 N.Y.S.2d 228, 233 (Sur. Ct. 1952).

The character of the claims raised in both actions by petitioner centers around allegations of excessive fees paid out of the estate and the alleged sale of estate property at less

than fair market value. Petitioner's claims were aimed at enlarging the amount of money to be ultimately distributed by the estate. These claims are analogous to those in Grabien v. Commissioner, 48 T.C. 750 (1967). In that case a taxpayer, who was a residuary legatee of 50 percent of his brother's estate, sued the executrix, alleging excessive fee payments and asking for an accounting. We denied a deduction for the attorney's fees paid for those actions because:

> Petitioner's interest in the estate was essentially a money claim dependent in amount on the amount of cash in the estate after the conversion to cash of the estate's assets and after allowance of all expenses of administration. A mere money claim of this sort is not property held for the production of income and petitioner never held the property for the production of income or otherwise until after the determination of the Probate Court with respect to the disputed extraordinary fees and distribution of the estate assets. The expense here in issue is analogous to an expense of perfecting or protecting title to property and not deductible as an expense of managing, maintaining, or conserving property. [Id. at 753; citations omitted.]

Accordingly, we find the claims pursued by petitioner in the State court to be in essence either capital or personal in nature.

We note that one of the allegations by petitioner in each of her two legal actions concerns the failure of the executors, for a period of time, to collect rent on the Chicago property and their concession of back rent upon the sale of the property, apparently to the lessee. Petitioners urge the Court to find

their circumstances to be analogous to those of the taxpayer in Estate of Kincaid v. Commissioner, T.C. Memo. 1986-543.  There, we found that the origin and character of the claim for which legal fees were incurred had as its source "the management and conservation of income-producing property in which [taxpayer] held an interest as an income beneficiary."  Here, for purposes of argument, we shall assume that some portion of petitioners' legal fees relates to the management of income producing property.

When a petitioner proves that some part of an expenditure was made for deductible purposes, and when the record contains sufficient evidence for us to make a reasonable allocation, we will do so.  Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Luman v. Commissioner, 79 T.C. 846 (1982).  Even if we were to agree that petitioner had a sufficient interest in the Chicago property to support a deduction, and that a portion of the legal fees she expended during the years 1990 through 1992, was for the production or collection of income, or for the management of property held for the production or collection of income, petitioners have failed to show (and we are unable to discern) any supportable basis for making a reasonable allocation of fees to the "management" of the Chicago property.

We do not know the hourly rate, if any, charged, or the total attorney time spent on the two lawsuits or on the particular issue involving the Chicago property.  Based on the

number of issues raised in the pleadings, and the amount of money involved in the respective issues, the management of the Chicago rental property appears to have been a minor issue.  Under the circumstances of this case, an "allocation of any portion of the [payments] to a section 212(2) purpose would be speculative, amounting to `unguided largesse.'"  Luman v. Commissioner, supra at 859 and cases cited therein.

Based on the entire record in this case we find that petitioners may not deduct any portion of their expenditures for attorney's fees in the years 1990, 1991, and 1992.

Decision will be entered for respondent.